**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AE, a minor, by through his Guardian ad Litem, MARIBEL HERNANDEZ,<br><br>  Plaintiff,<br><br>  vs.<br><br>COUNTY OF TULARE, et al,<br><br>  Defendants.<br>_____ / | CASE NO. CV F 09-2204 LJO DLB<br><br>**ORDER ON DEFENDANT FAMILY BUILDERS FOSTER CARE, INC.'S F.R.Civ.P. 12 MOTION TO DISMISS**<br>(Doc. 44.) |

**INTRODUCTION**

Defendant Family Builders Foster Care, Inc. ("Family Builders") seeks to dismiss as lacking necessary facts and conclusory minor plaintiff AE's ("AE's") deliberate indifference, negligence, defamation and invasion of privacy claims. AE responds that his claims, except invasion of privacy, survive in that they allege "more than a sheer possibility" that Family Builders "acted unlawfully." This Court considered Family Builders' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 12, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES AE's claims against Family Builders.

# BACKGROUND[1]

## Summary

The FAC alleges claims arising out of AE's foster care during which he was allegedly battered and abused by a foster brother during late 2008. AE is a boy and was born in 1998. Family Builders is a California corporation and California-licensed foster family agency and works with social service agencies to place children in foster homes.

## AE's Foster Care

On September 4, 2008, defendants "took legal and physical custody and control" of AE from his mother, Maribel Hernandez ("Ms. Hernandez"). Family Builders placed AE with foster father Doe 51 and foster mother Doe 52 in their home where a then 17-year-old boy ("older boy") resided.

In early November 2008 after the older boy had punched AE's face and threatened AE, the older boy struck AE, then age 9, on the chest, and AE suffered a 3½ by five-inch bruise on his left shoulder. Later in November, the older boy continued to torment AE by unlocking the bathroom door when AE showered and threatening to "kick [AE's] ass."

In December 2008, the older boy entered AE's bedroom, attempted to get into AE's bed, and pull down AE's pants. The FAC appears to allege that in December 2008, the older boy sodomized AE and forced AE to orally copulate the older boy. AE left Doe 51 and 52's foster home on December 15, 2008.

## Doe 51 Or 52's Alleged Statements

In February 2009, Doe 51 and/or 52 approached AE's new foster parent at a school and stated that: (1) AE "lied about the sexual assault"; (2) AE "did things" to the older boy; and (3) Doe 51 and/or 52 were "concerned about the well being" of the older boy.

## AE's Claims

The FAC alleges that AE's "former foster mother slandered Plaintiff, violated Plaintiff's right of privacy by publicly disclosing private facts, and breached and violated Plaintiff's confidentiality."

The FAC's first claim is against Family Builders and other defendants and is entitled "Deliberate

---

[1] The factual recitation is derived generally from AE's First Amended Complaint ("FAC"), the target of Family Builder's challenges. The FAC is a study in verbosity and repetition, and this Court will endeavor to summarize key allegations pertaining to Family Builders. In addition to Family Builders, the FAC names as defendants Tulare County ("County"), a couple of its agencies, and 13 County employees.

2

Indifference to the Risk of Harm to Plaintiff in Violation of the Due Process Clause of the Fourteenth Amendment, Pursuant to 42 U.S.C. §§ 1983, 1988." The claim alleges that Family Builders:

1. "[S]hould have known that their [sic] training, policies, customs, and practices regarding the custody, care and protection of dependent minors such as Decedent[2] were so inadequate that the failure to correct them would result in future incidents of injuries to, or the death of, dependent minors, such as Plaintiff";

2. "[A]uthorized and/or acquiesced in the aforementioned training, policies, customs and practices and the commission of the type of acts by their employees [sic] agent similar to those which are alleged herein to have caused the injuries to Plaintiffs [sic] and Decedent";

3. "[M]aintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs set forth above and . . . are liable for all injuries sustained by Plaintiffs [sic] as set forth herein";

4. Was "objectively deliberately indifferent . . . to the practice of subordinates, employees and/or agents of said Defendants of being objectively and subjectively indifferent to the health and safety of dependent minors such as Decedent"; and

5. "[H]ad actual and/or constructive knowledge . . . that it was the practice of subordinates, employees and/or agents of said Defendants to be objectively and subjectively indifferent to the health and safety of dependent minors such as Decedent."

The FAC's (second) negligence claim alleges that Family Builders "acted unreasonably and below the applicable standard of care" to actually and proximately cause injuries.

The FAC's (third) defamation and slander claim against Family Builders and Does 51 and 52 alleges that "Defendants Doe 51 and 52 knew, or reasonably should have known, that the statements that (a) Plaintiff lied about the sexual assault, and (b) it was Plaintiff who "did things" to the 17 year old boy, were false." The claim further alleges that "Defendants Doe 51 and/or Doe 52 made such statements in the course and scope of course and scope of [sic] their agency, employment, ostensible and apparent

---

[2] The reference to "Decedent" appears erroneous in that the TAC fails to identify "Decedent."

3

employment, and/or ostensible and apparent agency with Defendant FAMILY BUILDERS FOSTER CARE, INC."

The FAC's (fourth) invasion of privacy claim against Family Builders and Does 51 and 52 alleges that "Defendant Doe 51 and/or 52 violated Plaintiff's right of privacy by publicly disclosing private facts in that they revealed to the public that an illicit and improper sexual encounter had occurred between Plaintiff and the 17 year old boy." The claim further alleges that "Defendants Doe 51 and/or 52 made such statements in the course and scope of course and of [sic] their agency, employment, ostensible and apparent employment, and/or ostensible and apparent agency with Defendant FAMILY BUILDERS FOSTER CARE, INC."

The FAC seeks to recover for AE's "emotional injuries," past and future "medical and counseling expenses," and "lost earning capacity" as well as punitive damages and attorney fees.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Family Builders faults the FAC's failure to establish agency or employment of doe defendants to impose liability on Family Builders or to identify an official policy, custom or practice attributable to Family Builders. Relying on dubious authorities, AE claims that the FAC supports Family Builders' liability.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to Family Builders' challenges to the claims against it.

## **Absence Of Agency To Support Defamation**

Family Builders argues that the defamation claim fails in the absence of facts that Does 51 and 52 "were actual or ostensible agents or employees of Family Builders." AE responds that the FAC "adequately alleges that the alleged defamatory and slanderous statements were made within the course and scope of Does 51's and/or 52's agency or employment" with Family Builders.

"A corporation could not, itself, slander or libel a person; a corporation can act only through agents. It is the general rule that a corporation may be held 'liable for a slander uttered by its agent while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question . . ." *Swift v. Gray*, 101 F.2d 976, 980 (9th Cir. 1939). "A corporation can only act through individuals . . ., so it can only be liable for defamation derivatively." *Shaw v. Hughes Aircraft Co.*, 83 Cal.App.4th 1336, 1347,100 Cal.Rptr.2d 446 (2000) (citation omitted).

"An agency is either actual or ostensible." Cal. Civ. Code, § 2298. An actual agency arises "when the agent is really employed by the principal." Cal. Civ. Code, § 2299. "[A]ctual agency must rest on agreement or consent." *Naify v. Pacific Indem. Co.*, 11 Cal.2d 5, 12, 76 P.2d 663 (1938). "Actual agency typically arises by express agreement," *Van't Rood v. County of Santa Clara*, 113 Cal.App.4th 549, 571, 6 Cal.Rptr.3d 746 (2003), or "may be implied from the conduct of the parties." *Thayer v. Pacific Elec. Ry. Co.,* 55 Cal.2d 430, 438, 11 Cal.Rptr. 560, *cert. denied*, 368 U.S. 826, 82

S.Ct. 44 (1961).

"The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other. . . . An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent." *Kim v. Sumitomo Bank,* 17 Cal.App.4th 974, 983, 21 Cal.Rptr.2d 834 (1983). "Indicia of an agency relationship are the agent's power to alter legal relations between the principal and others, a fiduciary relationship, and the principal's right to control the agent's conduct." *Valley Investments, L.P. v. BancAmerica Commercial Corp.*, 88 Cal.App.4th 816, 826, 106 Cal.Rptr.2d 689 (2001). "Actual authority" arises when "a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care allows the agent to believe himself to possess." Cal. Civ. Code, § 2316.

"Ostensible" agency arises "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code, § 2300. In *J.L. v. Children's Institute, Inc.*, 177 Cal.App.4th 388, 403-404, 99 Cal.Rptr.3d 5 (2009), the California Court of Appeal addressed factors for ostensible agency:

> Before recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief. . . . Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists. (Citations omitted.)

"[W]here the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 209, 285 Cal.Rptr. 99 (1991) (citations omitted). "In assessing whether an employee's wrongful act was required by or incidental to his duties, the law defines occupational duties broadly. The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer." *Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 139, 176 Cal.Rptr. 287 (1981).

Family Builders holds AE to allege concrete facts of an agency relationship between Family

Builders and Does 51 and 52 beyond bare, conclusory allegations. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (allegations of "acting as agents" without "stated factual basis are insufficient as a matter of law"). Family Builders discredits the FAC's broad allegations of Doe 51 and 52's actual or ostensible agency in the absence of allegations that:

1. There was an agreement or Family Builder's consent that Does 51 and 52 would "speak for or otherwise represent Family Builders";
2. There was a written contract or oral agreement for employment or agency of Does 51 and 52 by Family Builders;
3. Family Builders gave Does 51 and 52 reason to believe that Does 51 and 52 "had actual authority to act or speak for Family Builders";
4. Does 51 and 52 had "power to alter the legal relationship of Family Builders with others";
5. A fiduciary relationship existed between Family Builders and Does 51 and 52;
6. Family Builders had necessary control over Does 51 and 52;
7. Family Builders gave AE's new foster mother reason to believe that Does 51 and 52 were Family Builders' agents or had authority to act or speak for Family Builders; and
8. AE's new foster mother believed that Does 51 and 52 were Family Builders' agents.

Family Builders further argues that "exercising supervision and imposing rules and regulations upon Does 51 and 52 as foster parents does not magically transform their relationship into one of agency or employment."

Family Builders is correct that the FAC's allegations of agency and employment rest on broad platitudes without supporting facts to prevent Family Builder's principal liability for Does 51 and 52's alleged statements. Family Builders correctly points to key missing facts to support an agency relationship with Does 51 and 52. The FAC fails to establish that Family Builders acted through Does 51 and 52 as agents in performance of their duties for Family Builders. No facts are present that Family Builders controlled or had the ability to control Does 51 and 52 at the time of their alleged statements. The FAC lacks allegations that Family Builders held out Does 51 and 52 as its agents when Does 51 and 52 made their alleged statements. Neither actual nor ostensible agency arises from the FAC's meager

facts on the matter.

AE fails to support his bold notion that "a statement by a former foster parent, Doe 51 and/or Doe 52, to a current foster parent concerning a foster child, such as Plaintiff, is within the course and scope of his or her agency and/or employment." AE points to authorities which address an inapplicable employee-employer relationship although AE does not claim meaningfully that Does 51 and 52 were Family Builders' employees. Family Builders lacked control over Does 51 and 52's comments at issue here. The FAC's deficiencies as to a relevant agency defeat the defamation claim to warrant its dismissal with prejudice in the absence of apparent facts to resurrect the claim.

### **Beyond The Scope Of Agency Or Employment**

In addition, Family Builders argues that Does 51 and/or 52's alleged statements are beyond a purported agency or employment with Family Builders to prevent Family Builders' liability as principal. Family Builders faults the absence of FAC allegations that Does 51 and 52 "made their statements within the scope of their employment or agency or in the actual performance of their duties as agents or employees of Family Builders" in that the FAC pleads facts that Does 51 and 52 did not act "within the scope of any alleged agency of employment for Family Builders." Family Builders points out that the alleged defamatory statements were made on February 24, 2009, two months after AE's December 15, 2008 removal from Does 51 and 52's foster care to render "ended" any agency or employment relationship with Family Builders regarding AE.

"A principal cannot be held when an actual agent acts beyond the scope of his actual or ostensible authority." *Van't Rood*, 113 Cal.App.4th at 573, 6 Cal.Rptr.3d 746.

Doe 51 and 52's alleged statements are beyond the scope of a purported agency. The scope of Doe 51 and 52's alleged agency was provision of foster care. Does 51 and 52 are not spokespersons for Family Builders to attribute Does 51 and 52's statements to Family Builders. Doe 51 and 52's alleged statements are well beyond the scope of Family Builders' limited relationship with Does 51 and 52, especially considering that Does 51 and 52 no longer cared for AE at the time of their alleged statements. As Family Builders notes, AE fails to substantiate how Does 51 and 52 acted within the scope of their agency when the FAC's "face" demonstrates the agency "had already ended" at the time of Does 51 and 52's alleged defamatory statements. In the absence of meaningful opposition to these points, AE appears

9

to concede that Doe 51 and 52's alleged statements are beyond the scope of their purported agency.

## **Invasion Of Privacy**

### *Principal Liability*

Family Builders faults the invasion of privacy claim for the same reasons it faults the defamation claim. Family Builders notes that the invasion of privacy claim is premised on the same conduct as the defamation claim. Family Builders contends that in the absence of FAC alleged facts to support agency, Family Builders lacks liability as a principal for alleged invasion of privacy. Family Builders further argues that since Does 51 and 52's alleged conduct exceeded the scope of purported agency, Family Builders likewise avoids liability as a principal for invasion of privacy.

Family Builders is correct. The invasion of privacy claim is premised on the same alleged statements as the defamation claim. The invasion of privacy claim fails in the absence of alleged facts to support agency and actionable conduct within the scope of agency.

### *Absence Of Broad Publication*

Family Builders further faults the invasion of privacy claim's failure to "allege that the private facts were publicized to the requisite amount of people" in that the FAC alleges that Does 51 and/or 52's statements were directed only to the new foster mother. AE concedes that absence of allegations "that private facts were published to more than one or a few people."

The invasion of privacy tort "must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." *Schwartz v. Thiele*, 242 Cal.App.2d 799, 805, 51 Cal.Rptr. 767 (1966) (quoting *Santiesteban v. Goodyear Tire & Rubber Co.,* 306 F.2d 9, 11 (5th Cir. 1962)). "The gravamen of the tort is ordinarily the unwarranted publication by defendant of intimate details of plaintiff's private life." *Coverstone v. Davies*, 38 Cal.2d 315, 322, 323, 239 P.2d 876, *cert. denied*, 344 U.S. 840, 73 S.Ct. 50 (1952).

Family Builders is correct that the invasion of privacy claim fails to allege an essential element – publication to the public in general or to a large number of persons. Mere stray comments to the new foster mother are inadequate to support an invasion of privacy claim.

Despite AE's concession that the invasion of privacy claim essentially fails, AE requests to amend the claim along with other claims to which AE is granted leave to amend. However, if AE's

other claims stand as is, AE agrees "in the interest of judicial economy to accept dismissal" of the invasion of privacy claim.

This Court does not horse trade on amendment of claims. AE offers nothing to revitalize the claim, especially given his admission of the failure of a key element of the claim. The invasion of privacy claim fails, despite this Court's ruling on AE's other claims.

## Negligence

Family Builders discredits the negligence claim in the absence of allegations to associate Family Builders to an actionable act or omission. Family Builders notes the claim's limited allegation that Family Builders and Does 51-75 "are legally responsible for, and have a duty to pay, all of the damages set forth in this cause of action pursuant to the common law of the State of California." Family Builders explains that "[t]here are literally no other allegations explicitly associated with the theory that Family Builders is liable for plaintiff's injuries due to general negligence." Family Builders points out that since it is a corporation, its negligence liability is premised on the conduct of its employee "in the discharge of his duties and within the scope of his authority, express or implied." *See O'Shea v. Pacific Gas & Elec. Co.*, 18 Cal.App.2d 32, 40, 62 P.2d 1066 (1936). Given that the only conduct attributable to Does 51-75 relates to defamation and invasion of privacy, Family Builders contends that the FAC fails to allege "that any employee or agent of Family Builders did anything for which Family Builders would be liable under the theory of general negligence." Family Builders continues that the FAC does not attribute to "an employee or agent of Family Builders any of the conduct described in the FAC."

At the outset, given the failure of the defamation and invasion of privacy claims, Family Builders is not liable for such claims under a negligence theory. AE appears to acknowledge as much and argues that the negligence claim is premised on theories that Family Builders:

1. Negligently hired, trained, supervised and/or monitored Does 51 and 52;
2. Is negligent per se for violation of 22 Cal. Code Reg., § 88063 ("section 88063") addressing accountability of foster care licensees; and
3. Is subject to respondeat superior liability for Does 51 and 52's negligence.

### *Negligent Hiring, Training, Supervision And Monitoring*

To support the negligence claim, AE points to FAC allegations that:

1. Family Builders "had not properly and reasonably evaluated, screened, trained, certified, licensed, supervised and monitored the foster parents and foster homes to whom Plaintiff was transferred and assigned"; and

2. Does 51 and 52 "had not been properly evaluated, screened, or trained to be foster parents" and "were not properly supervising or monitoring the minors in their care."

AE argues that he "need only prove **an** employee caused the injury, not necessarily **which** employee was at fault" in that respondeat superior liability lies despite failure to identify the wrongdoing employee. (Bold in original.) "Even where the plaintiff names and joins a particular employee and the judgment is for that employee, a simultaneous judgment against the employer will be upheld if the evidence supports the conclusion that other uncharged employees committed the wrongful acts." *Perez v. City of Huntington Park*, 7 Cal.App.4th 817, 821, 9 Cal.Rptr.2d 258 (1992).

AE appears to hold Family Builders to a standard of care for hiring, training, supervising and monitoring foster parents, such as Does 51 and 52. However, the FAC fails to identify or articulate such a standard of care. The FAC appears to assume a breach of an unidentified standard of care to result in AE's damages. The negligence claim fails in the absence of a clearly articulated standard of care.

### *Negligence Per Se*

Perhaps sensing the absence of an articulated standard of care, AE points to section 88063 to craft a negligence per se argument. AE relies on section 88063(a) and (b), which provide:

> (a) The licensee is accountable for the general supervision of the licensed facility and the certified family homes, for the establishment of policies concerning operations, and for ensuring operations comply with applicable regulations and statutes.
>
> (1) The licensee shall **establish internal procedures** to ensure that certified family homes report incidents, complaints, and alleged child abuse to the foster family agency.
>
> (2) The licensee shall **establish internal procedures** to ensure that reports specified in Section 88063(a)(1) by certified family homes are reported to the Department.
>
> (b) Upon substantiation of a complaint against a certified family home, the licensee shall **ensure that appropriate action is taken**.

        (1) In the case of a substantiated child abuse complaint, the appropriate action may **include removal of the child(ren)**, removal of a household member or decertification of the home, even though there were not sufficient grounds to warrant criminal prosecution.

        (2) In the case of some other type of substantiated complaint, the appropriate action must ensure that the certified family home complies with applicable statutes and regulations.

Evidence Code section 669(a) addresses negligence per se and provides a presumption of failure to exercise due care if:

1. Defendant "violated a statute, ordinance, or regulation of a public entity";
2. "The violation proximately caused death or injury to person or property";
3. "The death or injury resulted from an occurrence of the nature which the statute, ordinance or regulation was designed to prevent"; and
4. "The person suffering the death or injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

The negligence per se doctrine does not establish a cause of action distinct from negligence. "[A]n underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed." *Cal. Service Station and Auto. Repair Ass'n v. American Home Assurance Co.*, 62 Cal.App.4th 1166, 1178, 277 Cal.Rptr. 753 (1998). The negligence per se doctrine assists as evidence to prove negligence. "[I]t is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages. In such circumstances the plaintiff is not attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 333, 277 Cal.Rptr. 753 (1991).

The California Court of Appeals has explained:

> Thus, the doctrine of negligence per se does not establish tort liability. Rather, it merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation. . . . Even if the four requirements of Evidence Code section 669, subdivision (a), are satisfied, this alone does not entitle a plaintiff to a presumption of negligence *in the absence of an underlying negligence action.*

*Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1285, 45 Cal.Rptr.3d 222 (2006) (citation omitted; italics in original).

Citing impertinent portions of the FAC, AE argues that the FAC "alleges violation of a public safety regulation." AE argues that his harm "would not have occurred, and **certainly** would not have continued, if Defendant Family Builders Foster Care, Inc. had performed its 22 Cal. Code Reg., § 88063 regulatory duty."

AE fails to establish how the FAC alleges violation of section 88063(a). Section 88063(a) holds Family Builders accountable "for general supervision of . . . the certified family homes . . . establishment of policies concerning operations and . . . ensuring operations comply with applicable regulations and statutes." Section 88063(a) requires establishment of "internal procedures" to report incidents. Section 88063(b) requires "appropriate action" upon "substantiation of a complaint" to include a child's removal.

Section 88063 addresses general obligations not easily distilled to the FAC's allegations. AE points to no failure of Family Builders to establish internal procedures or inadequacy of internal procedures. The FAC suggests that upon substantiation of abuse by the older boy, AE was removed from the foster home. The FAC appears to take issue with AE's earlier removal, however, fails to allege facts of or to establish that Family Builder's violation of section 88063 caused AE's alleged injury. AE rests on platitudes, not specific, precise factual allegations to support negligence per se.

### *Respondeat Superior Liability*

AE attempts to impose respondeat superior liability on Family builders in that the FAC "adequately alleged" that Does 51 and 52 were Family Builders' "agents and/or employees." AE points to section 88063 as a source of Family Builders' supervision over Does 51 and 52.

AE fails to demonstrate "general supervision" under section 88063 translates to imposition of respondeat superior liability on Family Builders. The impetus of section 88063 is the establishment of "internal procedures," not hands-on or day-to-day supervision of foster parents.

Family Builders correctly notes that absence of allegations to support its negligence liability. The FAC alleges no breach of an identified standard of care, act or omission of a Family Builder's employee or agent to support negligence. Nonetheless, AE is granted an attempt to amend to plead supporting

facts for a negligence claim.

## **Deliberate Indifference**

The FAC's deliberate indifference claim is brought under 42 U.S.C. § 1983 ("section 1983"). Family Builders attacks the deliberate indifference claim's failure to identify individual conduct to subject Family Builders to section 1983 liability given that the FAC treats Family Builders as a "public entity." Family Builders notes the absence of "conduct of any 'individual' described by the FAC that could be identified as conforming to any asserted 'official policy, custom, or practice' of Family Builders."

AE argues that a "particular individual" need not be named as a defendant or identified to establish a requisite "underlying constitutional injury."

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

1  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. § 1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996). Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

An actionable policy or custom is demonstrated by:

1. An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

2. A "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988) (plurality opinion); or

3. Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. 915.

"The description of a policy or custom and its relationship to the underlying constitutional

16

violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997). "[E]xistence of a policy, without more, is insufficient to trigger local government liability." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). However, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).

"More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Local government liability is based on "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

To impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

The deliberate indifference claim's salient allegation is that Family Builders was "objectively deliberately indifferent . . . to the practice of subordinates, employees and/or agents of said Defendants or being objectively and subjectively indifferent to the health and safety of dependent minors such as Decedent." The FAC points to no conduct of a particular Family Builders' employee or agent to substantiate deliberate indifference to health and safety of dependent minors. As to Family Builders, the FAC focuses on Does 51 and/or 52's alleged statements. The FAC fails to identify a specific policy, custom or practice and to allege how a constitutional violation was a product of such policy, custom or practice. The FAC fails to connect Family Builders to a constitutional deprivation caused by itself or its agent or employee.

AE attributes the alleged constitutional deprivation to arise from "collective inaction" that "amounted to actionable deliberate indifference to the risk of harm" to AE. AE does not articulate the "collective inaction" and merely rests on a claim that it need not identify individuals "who failed to perform their duty." AE misjudges the key issue, which is existence of a specific policy, custom or practice and resulting constitutional deprivation. Despite failure of the deliberate indifference claim,

1  AE is granted an opportunity to amend the claim to cure deficiencies.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with leave to amend the FAC's (first) deliberate indifference and (second) negligence claims as to Family Builders; and

2. DISMISSES with prejudice the FAC's (third) defamation and slander and (fourth) invasion of privacy claims.

In its order on the other defendants' F.R.Civ.P. 12(b)(6) motion to dismiss, this Court will set deadline for AE to file a further amended complaint given that efficiency will be promoted by a further amended complaint that addresses combined deficiencies in claims against Family Builders and the other defendants. This Court ADMONISHES AE to file a clear, concise further amended complaint to comply with F.R.Civ.P. 8(b)'s requirement to state "a short and plain statement of the claim" and F.R.Civ.P. (d)(1)'s requirement that "[e]ach allegation must be simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179. This Court FURTHER ADMONISHES AE that failure to file a further amended complaint with requisite simplicity, conciseness and directness will serve as grounds to dismiss its claims.

IT IS SO ORDERED.

**Dated:   April 6, 2010**                         **/s/ Lawrence J. O'Neill**
                                                                    UNITED STATES DISTRICT JUDGE