1

2

3

4

5

6

7            **IN THE UNITED STATES DISTRICT COURT**

8            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10    AE, a minor, by and through his                    CASE NO. CV F 09-2204 LJO DLB
      Guardian ad Litem, MARIBEL
11    HERNANDEZ,                                          **ORDER ON TULARE COUNTY**
                                                          **DEFENDANTS' F.R.Civ.P. 12 MOTION TO**
12                        Plaintiff,                      **DISMISS**
                                                          (Doc. 46.)
13          vs.

14    COUNTY OF TULARE, et al.,

15                        Defendants.
      _____/

16

17                           **INTRODUCTION**

18          Defendants Tulare County ("County") and ten County employees[1] seek to dismiss as lacking

19    sufficient facts minor plaintiff AE's ("AE's") deliberate indifference and negligence claims arising out

20    of failure to remove AE from a foster care home where he allegedly was abused by an older boy in the

21    foster home.  AE responds that his claims survive in that they allege "more than a sheer possibility" that

22    the Tulare defendants "acted unlawfully" and enough facts "to raise a reasonable expectation that

23    discovery will reveal evidence" to prove his claims.  This Court considered the Tulare defendants'

24    F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 19, 2010 hearing, pursuant

25    to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES claims against the Tulare

26    defendants.

27    _____

28          [1]      The County and its ten employees pursuing dismissal will be referred to collectively as the "Tulare
      defendants."

                                              1

**BACKGROUND**[2]

**The Parties**

AE is a boy and was born in 1998.  The individual Tulare defendants seeking dismissal of AE's claims are: (1)  County social workers Yadira Portillo ("Ms. Portillo"), Courtney Wampler ("Ms. Wampler") and Miriam Sallam ("Ms. Sallam"); (2) social worker supervisors Prudence Morris ("Ms. Morris"), Patricia Negrette ("Ms. Negrette"), and Marie Focha ("Ms. Focha"); (3) Crystal Soto, M.D. ("Dr. Soto"); and (4) Adele Felix ("Ms. Felix"), Celeste Abarca ("Ms. Abarca") and Tiffany Pryor ("Ms. Pryor").[3]

**AE's Foster Care**

On September 4, 2008, defendants "took legal and physical custody and control" of AE, then age nine, from his mother, Maribel Hernandez ("Ms. Hernandez").  Defendant Family Builders Foster Care, Inc., a California-licensed foster family agency,  placed AE with foster father Doe 51 and foster mother Doe 52 in their home where a then 17-year-old boy ("older boy") resided in Doe 51 and 52's foster care.  At the time of the placement, the older boy was on the caseload of defendant social worker Heidi Williams, who knew that the older boy "was a dependent of the Court and on probation."

**The Older Boy's Abuse Of AE**

On November 5, 2008, a "reporting party" informed Ms. Portillo and Ms. Wampler that the older boy had hit AE on the chest and that AE had a 3½ by five-inch bruise on his left shoulder.  At that time, AE informed Ms. Felix that two weeks prior, AE had witnessed the older boy stealing money from a foster parent and reported the theft to the foster parent.  AE further informed Ms. Felix that the older boy "socked" AE in the face and "threatened" AE.

Ms. Portillo and Ms. Wampler photographed AE's bruise.  A foster parent informed Ms. Portillo and Ms. Wampler that the older boy "was a dependent of the Court and on probation" and that when the

---

[2]     The factual recitation is derived generally from AE's 48-page First Amended Complaint ("FAC"), the target of defendants' challenges.  The FAC is a study in verbosity, repetition and lack of clarity, and this Court will endeavor to summarize the key allegations pertaining to the Tulare defendants.

[3]     Ms. Portillo, Ms. Wampler, Ms. Morris, Ms. Negrette, Ms. Focha, Dr. Soto, Ms. Felix, Ms. Abarca, Ms. Pryor, and Ms. Sallam will be referred to collectively as the "individual Tulare defendants."  The FAC identifies Ms. Felix as "CWA Felix" and Ms. Pryor and "Tiffany Breen."  The FAC does not identify the positions of Ms. Felix, Ms. Abarca and Ms. Pryor.

foster parent wiggled the bathroom door when the older boy showered, the older boy "cursed her because he believed it was Plaintiff who was wiggling the door."

On November 20, 2008, AE's mother Ms. Hernandez stated to Ms. Felix that her two younger children (who apparently were placed in a different foster home) "were dressed nicely all of the time, but that Plaintiff was not" and that AE "did not want to talk to her about what was really going on in the foster placement." Ms. Hernandez requested "that she would like Plaintiff to be moved from his current foster placement to different foster placement."

Ms. Felix learned that AE had missed a doctor's appointment and that the foster mother indicated that AE "kept record of his doctor's appointments."

On November 25, 2008, Dr. Soto informed Ms. Morris by telephone that during an SCIU evaluation, AE stated to Dr. Soto that he older boy "would enter the bathroom [as AE used it], tell Plaintiff to hurry up, and curse Plaintiff." AE informed Ms. Portillo and Ms. Wampler that the older boy "would unlock the bathroom door using his nail and threatened to 'kick [AE's] ass'" and that the foster parent's "remedy was to instruct Plaintiff to use the bathroom downstairs." AE's request to telephone Ms. Hernandez was denied.

On November 26, 2008, Ms. Portillo provided "all of the facts, information, knowledge and notice that she had learned" to defendants Adrian Marquez ("Mr. Marquez"), AE's therapist, and Tulare Youth Service Bureau, Inc. ("Tulare Youth Service"). Mr. Marquez "indicated that he did not believe Plaintiff had been making allegations to seek attention, but was instead minimizing the behavior of the alleged perpetrator, the 17 year old boy."

On December 10, 2008, Doe 51 and/or Doe 52 informed Ms. Portillo that on December 5 or 6, 2008, AE informed the foster parent that the older boy "went into his bedroom and attempted to get into his bed and pull his pants down."

Ms. Portillo received December 12, 2008 telephone calls "from a man who identified himself as Plaintiff's uncle" and from a sheriff's deputy, who stated that a man who identified himself as Ms. Hernandez' brother "claimed that the agency was covering up an incident that occurred with his nephew and he wanted the Sheriff to pick up Plaintiff from foster care." Ms. Portillo contacted Ms. Hernandez, who informed Ms. Portillo "that she had related to Defendant CW Felix her concerns that she wanted

Plaintiff removed from his current foster home" and that "she was unable to communicate to Defendant Tiffany Breen because Defendant Tiffany Breen did not speak Spanish." Ms. Portillo, Ms. Sallam and a Tulare Police Department officer interviewed AE who disclosed to the officer "that he had been sodomized and forced to do oral copulation by the perpetrator, the 17 year old."

### AE's Removal

On December 12 and/or 15, 2008, Ms. Portillo and defendant Leticia Quezada ("Ms. Quezada") informed Ms. Hernandez "that Plaintiff had been assaulted, battered, sexually abused, sodomized and orally copulated" by the older boy and that AE "had been moved to another foster home."

On December 15, 2008, Ms. Portillo, a Tulare Police Department detective, a forensic interview specialist, and a deputy district attorney interviewed AE, who stated that the older boy did "nasty stuff" to AE, "pulls my pants down," "put his thingy in his mouth," and "put his things in his butt."

On December 15, 2008, Ms. Portillo met with Ms. Focha to reassess AE's placement and placed AE in another foster home.

### AE's Claims

The FAC alleges that the global "defendants" "knew or should have known . . . it was unreasonably and recklessly dangerous to place Plaintiff in the same foster home, or with the same foster parents, Defendants Doe 51 and Doe 52, as the 17 year old boy who physically and sexually assaulted and battered Plaintiff" and that despite such knowledge "failed and refused to remove Plaintiff from the foster home." The FAC further alleges that the global "defendants" failed to comply with various California statutes and regulations on foster care placement, monitoring, reporting, and requesting law enforcement assistance.

The FAC accuses Ms. Portillo and Ms. Wampler of knowing that the older boy "posed a threat to Plaintiff and/or minors such as Plaintiff." The FAC alleges that the individual Tulare defendants are "liable pursuant to California Government Code § 820(a)" and that the County has "respondeat superior liability for the wrongful conduct" of its agents and employees "pursuant to California Government Code § 815.2(a)."

The FAC's first claim accuses the Tulare defendants of "deliberate indifference to the risk of harm to Plaintiff in violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42

1   U.S.C. §§ 1983, 1988."

2       The FAC's (second) negligence claim alleges that the Tulare defendants "acted unreasonably and

3   below the applicable standard of care" to actually and proximately cause injuries and damages.

4       The FAC seeks to recover for AE's "emotional injuries," past and future "medical counseling

5   expenses," and "lost earning capacity" as well as punitive damages and attorney fees.

6                                **DISCUSSION**

7                    **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

8       The Tulare defendants seek dismissal of the claims against them in that "the actual factual matter

9   for the injury sustained (the molest by the 17 year old foster brother) is minimal" and that the 48-page

10  FAC "fails to cross the threshold from conceivable to plausible."  The Tulare defendants hold AE "to

11  plead sufficient factual matter to establish more than a mere possibility that there is liability."

12      A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

13  forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

14  of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

15  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

16  support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco

17  Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

18  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

19  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling

20  v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

21      In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

22  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

23  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty

24  Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

25  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

26  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

27  need not permit an attempt to amend if "it is clear that the complaint could not be saved by an

28  amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

1   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

2   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

3   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

4   *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

5   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

6   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

7   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

8   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

9   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

10   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

11   In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

12   explained:

13   To survive a motion to dismiss, a complaint must contain sufficient factual
    matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A

14   claim has facial plausibility when the plaintiff pleads factual content that allows the court
    to draw the reasonable inference that the defendant is liable for the misconduct alleged.

15   . . . The plausibility standard is not akin to a "probability requirement," but it asks for
    more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

16

17   After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

18   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

19   content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

20   *Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

21   The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

22   First, the tenet that a court must accept as true all of the allegations contained in
    a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of

23   a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .

24   . Determining whether a complaint states a plausible claim for relief will . . . be a
    context-specific task that requires the reviewing court to draw on its judicial experience

25   and common sense. . . . But where the well-pleaded facts do not permit the court to infer
    more than the mere possibility of misconduct, the complaint has alleged – but it has not

26   "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

27   In keeping with these principles a court considering a motion to dismiss can
    choose to begin by identifying pleadings that, because they are no more than conclusions,

28   are not entitled to the assumption of truth. While legal conclusions can provide the

6

1    framework of a complaint, they must be supported by factual allegations. When there are
2    well-pleaded factual allegations, a court should assume their veracity and then determine
     whether they plausibly give rise to an entitlement to relief.

3    *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

4    With these standards in mind, this Court turns to the Tulare defendants' challenges to the claims
5    against them.

6                                   **Deliberate Indifference**

7    The Tulare defendants characterize the FAC's deliberate indifference claim to allege that AE
8    "was deprived of this 14th Amendment rights because Defendants placed Plaintiff in a dangerous foster
9    home" and "erroneously retained Plaintiff in an unsafe home." The Tulare defendants fault the claims
10   failure to allege conduct to establish "plausible deliberate indifference."

11   AE responds that the claim alleges "more than a sheer possibility" that the Tulare defendants
12   "were deliberately indifferent" to the "risk of harm" to AE.

13   "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person
14   acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the
15   claimant of some right, privilege, or immunity protected by the Constitution or laws of the United
16   States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

17   "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for
18   vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,
19   811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).
20   Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived
21   of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S.
22   247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996
23   (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of
24   a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689
25   (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional
26   right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability
27   for violations of rights protected by the Constitution, not for violations of duties of care arising out of
28   tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

                                                    7

The Tulare defendants rely on *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195-197, 109 S.Ct. 998 (1989), where the U.S. Supreme Court held that a state owed no duty to child whose abuse it was investigating to protect him from beating by his father:

> But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against **invasion by private actors**. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression," *Davidson v. Cannon, supra*, 474 U.S., at 348, 106 S.Ct., at 670; *see also Daniels v. Williams, supra*, 474 U.S., at 331, 106 S.Ct., at 665 ("'"to secure the individual from the arbitrary exercise of the powers of government,"'" and "to prevent governmental power from being 'used for purposes of oppression' ") (internal citations omitted); *Parratt v. Taylor*, 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result) (to prevent the "affirmative abuse of power"). Its purpose was to protect the people from the State, **not to ensure that the State protected them from each other**. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.
>
> . . . If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the **State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.** As a general matter, then, we conclude that a **State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause**.  (Bold added.)

Nonetheless, there are exceptions to the general rule that a state's failure to protect against private violence does not violate the due process clause.  The "special relationship" exception provides that "when a State takes a person into its custody and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058-1059 (9ᵗʰ Cir. 1998), *cert. denied*, 526 U.S. 1038, 119 S.Ct. 1333 (1999); *see Estate of Amos ex rel. Amos v. City of Page, Az.*, 257 F.3d 1086, 1090 (9ᵗʰ Cir. 2001).  In addition, the second exception to the *DeShaney* rule – the "danger creation" exception – "exists where the state affirmatively places the plaintiff in a dangerous situation." *Huffman*, 147 F.3d at 1059; *see Estate of Amos, Az.*, 257 F.3d at 1091.  The "'danger creation' basis for a claim . . . necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9ᵗʰ Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2442 (1993).

To examine whether a state actor "affirmatively places an individual in danger," a court examines whether the state actor "left the person in a situation that was more dangerous than the one in which they found him." *Munger v. City of Glasgow*, 227 F.3d 1082, 1086 (9th Cir. 2000); *see Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006). A court determines whether the state actor's affirmative conduct placed the plaintiff "in danger that she otherwise would not have faced." *Kennedy*, 439 F.3d at 1063. In addition, a court must "decide related issues of whether the danger to which [the state actor] exposed [plaintiff] was known or obvious, and whether he acted with deliberate indifference to it." *Kennedy*, 439 F.3d at 1064. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997).

The Tulare defendants contend that the FAC fails to allege facts that the Tulare defendants "were deliberately indifferent in placing or retaining Plaintiff in his foster home with his 17 year old foster brother." The Tulare defendants criticize the FAC's legal conclusion of known risk based on the older boy's probation status and appearance on social worker Heidi Williams' caseload. The Tulare defendants argue that the allegation that the older boy on probation might present a risk fails to "cross the threshold from conceivable to plausible" in that the older boy "could have been placed under probation for any number of reasons."

Turning to retention in the foster home, the Tulare defendants hold AE to "establish that, in light of the pre-existing law, the illegality of the action must be apparent and deliberately indifferent." The Tulare defendants fault the FAC's reliance on the allegations that on November 5, 2008, Ms. Portillo and Ms. Wampler were informed that the older boy bruised AE and that AE told Ms. Felix that the older boy "socked" AE in the face. The Tulare defendants assert that alleged deliberate indifference is negated by FAC allegations of investigation into the incidents, including photographs of AE's bruise and speaking to the foster parent. The Tulare defendants point to the absence of allegations that AE "expressed a desire to be removed" or "that he otherwise told the social workers that he was afraid."

The Tulare defendants further fault the allegation that on November 26, 2008, County social workers were informed that the older boy unlocked the bathroom door and threatened to "kick [AE's] ass." The Tulare defendants point to mitigating allegations that Ms. Portillo and Ms. Wampler spoke

to AE "about the allegations that same day," spoke to Dr. Soto, and addressed the issue by advising AE to use the downstairs bathroom.  The Tulare defendants take solace in the lack of allegations that AE "asked to be removed from his foster home or that he expressed any fear of the 17 year old to any of the named defendants" or that the older boy "had touched AE in any matter after the November 5, 2008 referral."

Turning to the December 10, 2008 disclosure that on December 5, 2008, the older boy tried to climb in AE's bed and pull down his pants, the Tulare defendants note the absence of allegations of "any further contact with the 17 year old after that date."  The Tulare defendants again turn to the lack of allegations that AE asked to be removed from the foster home.

AE does not meaningfully address the Tulare defendants' points.  In his opposition, AE repeats verbatim five pages of the FAC without explanation of how the allegations withstand scrutiny.  AE offers the platitude "[h]ad defendants properly responded . . . the sexual assault and rape of Plaintiff would have never occurred."  AE offers that "Defendants had plenty of sufficient prior notice that the 17 year old boy was threatening, abusive and dangerous prior to the sexual assault and rape of Plaintiff."  AE adds that "alleged 'failure' to 'prove' deliberate indifference at the pleading stage would be inappropriate given the circumstantial evidence alleged in the Complaint."

Platitude and generalizations aside, AE offers nothing to substantiate his deliberate indifference claim against the Tulare defendants.  AE ignores the *DeShaney* rule and exceptions to it.  AE appears to rely on this Court's emotional response to permit his deliberate indifference claim to survive.  AE leaves it to this Court to point out that the Tulare defendants focus on isolated allegations and ignores allegations of:

1.   The older boy's threat to AE after AE reported the older boy's theft of money;

2.   The older boy's cursing the foster parent whom he believed was AE wiggling the bathroom door;

3.   Ms. Hernandez' November 20, 2008 request to remove AE from the foster home after AE "did not talk to her about what was really going on in the foster placement";

4.   Mr. Marquez' determination that AE had not made allegation to seek attention and minimized the older boy's behavior;

1       5.      Ms. Hernandez' December 12, 2008 request to remove AE from the foster home; and

2       6.      AE's December 15, 2008 disclosure of the older boy sexual abuse of AE.

That said, the deliberate indifference claim is a myriad of allegations without clear distinction to most of the Tulare defendants.  The Tulare defendants correctly note frivolous "claims against every County employee who had any contact with AE, whether or not they had any role in making placement and/or case management decisions."  Social workers Ms. Portillo and Ms. Wampler and Ms. Felix whose position is not alleged appear most prominently, especially as to allegations of failure to detect potential harm to AE.  The other defendants appear in passing references which do not substantiate deliberate indifference, especially considering the *DeShaney* rule.  As such, the deliberate indifference claim is subject to dismissal with AE granted leave to amend only as to Ms. Portillo, Ms. Wampler and Ms. Felix.

## Negligence

The Tulare defendants argue their liability is not based on "negligence in performing discretionary duties" but must be premised on "failure to perform a mandatory duty" provided by an enactment "designed to protect against the risk of a particular kind of injury."

### *The California Government Claims Act*

The California Government Claims Act, Cal. Gov. Code, §§ 810, et seq., does not provide that a public entity is liable for its own conduct or omission to the same extent as a private person or entity. *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).  California Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute."  Certain statutes provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities, but the Government Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1457, 81 Cal.Rptr.2d 165 ("in absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be

11

liable"); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal. App.3d 859, 866, 247 Cal.Rptr. 504 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

The Tulare defendants contend that "liability must be based on statute" in that "social workers have discretionary immunity for their actions in connection with the provision of child welfare services." The Tulare defendants note that a social worker may be liable for failure to perform a mandatory duty "provided the enactment is designed to protect against the risk of a particular kind of injury, and if the injury sustained was proximately caused by . . . failure to discharge the duty." The Tulare defendants point to California Government Code section 815.6, which provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

California Government Code section 815.6 contains a three-pronged test to determine whether liability may be imposed on a public entity: "(1) an enactment must impose a mandatory, not discretionary, duty . . .; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability . . .; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." *Becerra*, 68 Cal.App.4th at 1458, 81 Cal.Rptr.2d 165.

"Whether an enactment is intended to impose a mandatory duty is a question of law for the court." *Becerra*, 68 Cal.App.4th at 1458, 81 Cal.Rptr.2d 165. The California Supreme Court has explained:

> First and foremost, application of [Government Code] section 815.6 requires that the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion.

*Haggis v. City of Los Angeles,* 22 Cal.4th 490, 498, 93 Cal.Rptr.2d 327 (2000).

"An enactment creates a mandatory duty if it requires a public agency to take a particular action." *County of Los Angeles v. Superior Court*, 102 Cal.App.4th 627, 639, 125 Cal.Rptr.2d 637 (2002)

(quoting *Wilson v. County of San Diego*, 91 Cal.App.4th 974, 980, 111 Cal.Rptr.2d 173 (2001). "An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion. The use of the word 'shall' in an enactment does not necessarily create a mandatory duty." *County of Los Angeles*, 102 Cal.App.4th at 639, 125 Cal.Rptr.2d 637.

In his opposition papers, AE cites California Government Code section 820(a), which provides: "Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person."

California Government Code section 820.2 addresses a public employee's exercise of discretion and provides:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

In addition, AE's opposition papers cite to California Government Code section 815.2, which addresses public entity immunity and provides:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . .

> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission on an employee of the public entity where the employee is immune from liability.

AE argues that "Government Code § 820.2 discretionary acts immunity does not apply to 'operational decisions' decisions [sic] like those at issue herein, but instead applies only to 'policy making decisions.'" AE argues that dismissal of the negligence claim based on California Government Code section 820.2 discretionary immunity is unwarranted "because there is, at the pleading stage, no allegation that Defendants actually exercised any discretion."

The Tulare defendants respond that the FAC demonstrates discretionary acts in the "FAC admits that social workers spoke to AE, spoke to foster parents, took pictures, spoke to AE's therapist, and offered solutions." The Tulare defendants continue that "the FAC makes an affirmative showing that the social workers acted."

1    At this pleading stage, this Court is not prepared to conclude that California Government Code

2  section 820.2 provides discretionary immunity to all individual Tulare defendants.   The Tulare

3  defendants point to no on-point authority to extend discretionary immunity to the extent they seek.   In

4  fact, only *Alicia T. v. County of Los Angeles*, 222 Cal.App.3d 869, 882-883, 271 Cal.Rptr. 513 (1990),

5  cited by the Tulare defendants, addresses meaningfully California Government Code section 820.2

6  discretionary immunity, however, the California Court of Appeal in *Alicia T.* considered alleged

7  wrongful removal of a child from parental custody, not retention of a foster child in a particular foster

8  home. The Tulare defendants' points on discretionary immunity are unavailing.   Nonetheless, the Tulare

9  defendants persuasively fault the FAC's failure to identify a mandatory statutory duty upon which to

10  premise negligence liability.

11                                  ***Statutory Duties***

12    The FAC cites California Welfare and Institutions Code section 16501.1(f)(12) which provides

13  that in development of a case plan, a "child shall be given a meaningful opportunity to participate in the

14  development of the case plan and state his or her preference for foster care placement."   The Tulare

15  defendants argue that the statute requires social workers "to analyze the selection criteria prior to

16  placement of the child" and "does not specify the ultimate placement or dictate that any factor is

17  controlling."   The Tulare defendants contend that the statute imposes only a mandatory duty "to evaluate

18  criteria prior to placement," and lacks "a purpose to prevent sexual abuse."   The Tulare defendants note

19  that the statute "does not provide that a foster child is entitled to the foster placement of his choice" and

20  that the FAC does not allege an omission to ask AE "what his preference was."   The Tulare defendants

21  conclude that the statute "is not applicable as a basis for liability."

22    AE responds that as to his preference, the FAC alleges that defendants did not give AE "an

23  opportunity to 'state his or her preference for foster care placement'" and did not "evaluate the criteria

24  prior to placement" to result in placement "in a dangerous environment that caused his injuries."

25    The Tulare defendants are correct.   California Welfare and Institutions Code section

26  16501.1(f)(12) does not impose on them a mandatory duty upon which AE may impose a negligence

27  claim let alone his wild assertion that had he had an opportunity to state his preference, his injuries

28  would have been avoided.   The FAC alleges no facts to support such an unfounded legal conclusion.

The FAC cites to California Penal Code section 11166(j), which mandates welfare department reports to the "law enforcement agency having jurisdiction . . . every known or suspected instance of child abuse or neglect."  The FAC faults the failures of "defendants":

1.   On November 5, 2008, to report that the older boy caused AE's left shoulder bruise and that AE reported that the older boy had previously punched AE in the face and threatened AE;

2.   On November 25, 2008, to report that the older boy "would enter the bathroom while Plaintiff was showering or using the bathroom, curse Plaintiff, and threaten to kick Plaintiff's ass"; and

3.   On December 10, 2008, to report that Does 51 and/or 52 had informed Ms. Portillo that AE had informed her that the older boy "went into Plaintiff's room, attempted to get into his bed, and pull Plaintiff's pants down."

The Tulare defendants fault the allegations based on California Penal Code section 11166(j) in the absence of "facts to establish that any failure to cross report caused the sexual molest."  The Tulare defendants point to allegations that Ms. Portillo photographed the bruise, spoke to the foster parent, and maintained contact with AE and the absence of information of "further incidences of bruises or physical alterations between the two minors until December 10, 2008."  The Tulare defendants discredit the "kick [AE's] ass" threat to "rise to the level of child abuse requiring such a cross report."  The Tulare defendants claim insufficient allegations to support that AE "was at a risk of being sexually abused."

AE offers little meaningful to challenge the Tulare defendants' points.  Again, AE's opposition quotes verbatim several pages of the FAC without meaningful discussion or analysis.  AE asserts that Ms. Portillo's investigation "is most assuredly not the same as an investigation by 'the law enforcement agency having jurisdiction over the case.'"  AE argues that the FAC alleges that proper cross-reporting to the applicable law enforcement agency would have prevented AE's attack by the older boy.  AE asserts that the older boy's conduct prior to the alleged sexual assault equates to "mental suffering" under California Penal Code section 11166(j).

The FAC lacks sufficient facts to invoke requirements of California Penal Code section 11166(j) or similar statutes relied upon by AE.  The Tulare County defendants correctly challenge that the older

1   boy's alleged initial acts qualify as "child abuse or neglect."  Moreover, AE conveniently ignores that

2   the FAC alleges that Tulare defendants summoned law enforcement officers.

3      The FAC cites to Regulation 31-130.11 of the California Health and Human Services Agency,

4   Department of Social Services, Child Welfare Services Manual of Policies and Procedures ("DSS

5   Manual").  The regulation requires a social worker to request law enforcement assistance when the

6   "physical safety of family members or county staff is endangered."  The Tulare defendants describe the

7   regulation as "a statement of policy" and notes that it does not apply when a child has been removed

8   from the parental or custodial home and placed in foster care.

9      The FAC cites DSS Manual Regulation 31-405.1(1), which requires a social worker in arranging

10  a child's placement to "[m]onitor the child's physical and emotional condition, and take necessary

11  actions to safeguard the child's growth and development while in placement."  The Tulare defendants

12  construe the regulation as "a statement of policy," not a mandatory duty in the failure to "direct the

13  manner in which the goal will be attained."  "Placement and supervision are functions involving the

14  exercise of discretion. A County is not the insurer of a child's physical and emotional condition, growth

15  and development while in foster care placement."  *County of Los Angeles,* 102 Cal.App.4th at 643, 125

16  Cal.Rptr.2d 637.

17     AE does not challenge the Tulare defendants' points regarding DSS Manual Regulation 31-

18  405.1(1).  AE points to DSS Manual Regulation 31-130.11 regarding social worker request for law

19  enforcement assistance when the "physical safety of family members or county staff is endangered."

20  AE argues that he was a "family member" as a foster child of Does 51 and 52 entitled to law

21  enforcement assistance.

22     AE fails to establish that DDS Manual Regulation 31-130.11 applies to post-foster care

23  placement and retention in a foster home.  The regulation clearly applies to removal from a parental or

24  custodial home.  Moreover, the FAC treats all Tulare defendants as globally responsible for failure to

25  request law enforcement assistance but lacks facts to impose liability on all Tulare defendants for such

26  failure.

27     In sum, the FAC fails to establish a negligence claim against the Tulare defendants.  At best, the

28  FAC remotely connects social workers Ms. Portillo and Ms. Wampler and Ms. Felix to a hint of

16

negligence.  As such, the negligence claim is dismissed with prejudice, except, out of an abundance of caution, AE is granted an opportunity, if he chooses, to amend the negligence claim as to Ms. Portillo, Ms. Wampler and Ms. Felix only.

### Claims Against Individual Tulare Defendants

The individual Tulare defendants fault the FAC's absence of facts to support conclusory allegations that the individual Tulare defendants "knew or should have known every fact known by every other Defendant" to attempt to overcome respondeat superior restrictions.  The individual Tulare defendants identify the following allegations as insufficient to support claims against them.

#### *Ms. Abarca*

Ms. Abarca challenges a claim against her given that the only alleged facts as to her arise after AE's December 15, 2008 removal from the foster home.  AE responds that as a "team leader," Ms. Abarca is "charged with the knowledge of the employees under [her] supervision."  The only meaningful allegation as to Ms. Abarca is that Ms. Abarca "met with Plaintiff's new foster parent, who informed said Defendant that Plaintiff stated he was afraid of his former foster mother, and pointed her out at school."  The FAC lacks allegations to support a claim against Ms. Abarca to warrant her dismissal with prejudice.

#### *Patricia Negrette*

Ms. Negrette faults the FAC's bare allegation that she supervised Ms. Abarca.  AE responds that as a "team leader," Ms. Negrette is "charged with the knowledge of the employees under [her] supervision."  The only meaningful allegations as to Ms. Negrette is that Ms. Abarca "was under the supervision and control of Team Leader Defendant PATRICIA NEGRETTE," and that Ms. Negrette "had actual and/or constructive notice of all facts known by Defendant PATRICIA NEGRETTE."  The FAC lacks allegations to support a claim against Ms. Negrette to warrant her dismissal with prejudice.

#### *Ms. Portillo And Ms. Wampler*

Social workers Ms. Portillo and Ms. Wampler argue that they are "immune from liability under both state and federal law" for the reasons addressed above to challenge AE's deliberate indifference and negligence claims.  AE responds that the allegations against Ms. Portillo and Ms. Wampler "are similar."

1    The FAC remotely connects Ms. Portillo and Ms. Wampler with meaningful facts to claims of

2    deliberate indifference and negligence.  AE is granted an opportunity to attempt to amend deliberate

3    indifference and negligence claims against Ms. Portillo and Ms. Wampler.

### Ms. Morris

5    Ms. Morris challenges individual or respondeat superior liability premised on allegations that

6    Ms. Morris:

7    1.    Supervised Ms. Portillo and had actual and/or constructive knowledge of facts known by

8          Ms. Portillo;

9    2.    Spoke to Dr. Soto who had performed an SCIU interview; and

10   3.    Was told that if AE took too long in the bathroom, the older boy would enter the

11         bathroom, tell AE to hurry, and curse at AE.

12   AE nonsensically responds that the "claims against Defendant Morris are at least as strong as the

13   claims against Defendant Morris."  Apparently, AE meant to refer to Ms. Portillo to allege Ms. Morris'

14   liability based on supervision of Ms. Portillo.  AE cites no factual or legal authority to support Ms.

15   Morris' alleged liability to warrant Ms. Morris' dismissal with prejudice.

### Ms. Felix

17   Ms. Felix notes the FAC allegation that on November 5, 2008, AE informed her that two weeks

18   prior, AE reported the older boy's theft of his foster parent and that the older boy "socked him in the face

19   and threatened him."  Ms. Felix notes the absence of indication that AE "reported that he received

20   bruising from this incident" and that social workers Ms. Portillo and Ms. Wampler "followed up on the

21   incident."  Ms. Felix further notes that absence of allegation that she "was the assigned social worker,

22   or that she otherwise had the authority to make placement decisions about the minor."

23   Ms. Felix points to the FAC allegation that on November 20, 2008, Ms. Hernandez told Ms.

24   Felix that AE was not dressed as nicely as Ms. Hernandez' other children.  Ms. Felix further notes the

25   FAC allegation that Ms. Felix questioned AE's foster mother about missing a doctor's appointment and

26   the foster mother's response that AE kept record of his doctor's appointments.  Ms. Felix argues that

27   none of the incidences suggest that AE was "at risk" of molestation by the older boy.

28   This Court agrees that the FAC fails to allege sufficient claims against Ms. Felix.  However, the

1   FAC alleges enough to grant AE an opportunity to attempt to amend, if AE chooses, claims against Ms.

2   Felix.  As such, this Court is not in position to dismiss her with prejudice – at this time.

3                                                ***Dr. Soto***

4           Dr. Soto notes the limited FAC allegation that she performed an SCIU evaluation and expressed

5   concerns to a social worker that the older boy opened the bathroom door when AE took too long.  Dr.

6   Soto points out the absence of allegations of her "responsibility for placement, or that she was the

7   assigned worker, or that she had knowledge of any other allegation."

8           AE offers no meaningful opposition to dismissal of Dr. Soto.  The FAC lacks allegations to

9   support a claim against Dr. Soto to warrant her dismissal with prejudice.

10                                              ***Ms. Pryor***

11          Ms. Pryor notes the FAC's limited allegation that she did not speak English.  AE mindlessly

12  responds that FAC allegations against Ms. Pryor "are reasonable given the fact that, at this point, all of

13  the facts regarding [her] knowledge are exclusively within the possession of Defendants."

14          AE offers no meaningful opposition to dismissal of Ms. Pryor.  The FAC lacks allegations to

15  support a claim against Ms. Pryor to warrant her dismissal with prejudice.

16                                              ***Ms. Focha***

17          Ms. Focha challenges the FAC's limited allegations that she was a team leader and that on

18  December 15, 2008, Ms. Portillo met with Ms. Focha to reassess AE's placement and that AE was

19  placed in another foster home.  AE responds that as a "team leader," Ms. Focha is "charged with

20  knowledge of employees under [her] supervision."

21          AE cites no factual or legal authority to support Ms. Focha's alleged liability to warrant Ms.

22  Focha's dismissal with prejudice.

23                                              ***Ms. Sallam***

24          Social worker Ms. Sallam points to limited FAC allegations that on December 12, 2008, she, Ms.

25  Portillo and a Tulare Police Department detective interviewed AE regarding his alleged molestation.

26          AE mindlessly responds that FAC allegations against Ms. Sallam "are reasonable given the fact

27  that, at this point, all of the facts regarding [her] knowledge are exclusively within the possession of

28  Defendants."

1    AE offers no meaningful opposition to dismissal of Ms. Sallam. The FAC lacks allegations to

2    support a claim against Ms. Sallam to warrant her dismissal with prejudice.

3    ## CONCLUSION AND ORDER

4    Through bloated, inartful allegations, the FAC attempts to impose unsupported liability on

5    numerous public servants without even the slightest nod to federal pleading standards. The FAC is long

6    on verbosity and short on facts. Out of an abundance of caution, this Court grants an attempt to amend

7    claims against three individual Tulare defendants to whom the FAC remotely connects with facts to

8    support potential deliberate indifference and negligence claims. The FAC appears to name the other

9    Tulare defendants merely because their offices or functions touched on the alleged events surrounding

10   AE. As such, this Court:

11       1.    DISMISSES with prejudice this action against the County, Ms. Morris, Ms. Negrette,

12             Ms. Focha, Dr. Soto, Ms. Abarca, Ms. Pryor and Ms. Sallam;

13       2.    DIRECTS the clerk to enter judgment against plaintiff AE and in favor of defendants

14             Tulare County, Prudence Morris, Patricia Negrette, Marie Focha, Crystal Soto, M.D.,

15             Celeste Abarca, Tiffany Pryor, and Miriam Sallam in that there is no just reason to delay

16             to enter such judgment given AE's claims against these defendants and these defendants'

17             alleged liability are clear and distinct from claims against and liability of other

18             defendants. *See* F.R.Civ.P. 54(b);

19       3.    DISMISSES without prejudice the FAC's (first) deliberate indifference claim against Ms.

20             Portillo, Ms. Wampler and Ms. Felix;

21       4.    DISMISSES without prejudice the FAC's (second) negligence claim against Ms. Portillo,

22             Ms. Wampler and Ms. Felix;

23       5.    ORDERS AE, no later than April 30, 2010, to file and serve either: (a) a second amended

24             complaint against all remaining defendants; or (b) a statement that AE does not seek to

25             pursue claims against remaining defendants; and

26       6.    ORDERS all remaining defendants, including Tulare Youth Service Bureau and Adrian

27             Marquez, no later than 20 calendar days after service of AE's second amended

28             complaint, to file and serve a response to the second amended complaint. Defendants

1    Tulare Youth Service Bureau and Adrian Marquez need not respond to the FAC.

2    If AE proceeds with this action, this Court ADMONISHES AE to file a clear, concise second

3 amended complaint to comply with F.R.Civ.P. 8(b)'s requirement to state "a short and plain statement

4 of the claim" and F.R.Civ.P. (d)(1)'s requirement that "[e]ach allegation must be simple, concise, and

5 direct."   This requirement "applies to good claims as well as bad, and is the basis for dismissal

6 independent of Rule 12(b)(6)."   *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).   "Something

7 labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without

8 simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the

9 essential functions of a complaint."   *McHenry*, 84 F.3d at 1180.   "Prolix, confusing complaints . . .

10 impose unfair burdens on litigants and judges."   *McHenry*, 84 F.3d at 1179.   This Court FURTHER

11 ADMONISHES AE that failure to file a second amended complaint with requisite simplicity,

12 conciseness and directness will serve as grounds to dismiss its claims.   This Court FURTHER

13 ADMONISHES AE not to attempt to replead or purse claims dismissed with prejudice.

14    IT IS SO ORDERED.

15 **Dated:      April 14, 2010**                        /s/ Lawrence J. O'Neill
16                                                                 UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

21