1

2

3

4

5

6

7

8

9               **IN THE UNITED STATES DISTRICT COURT**

10              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   AE, a minor, by and through his              CASE NO. CV F 09-2204 LJO DLB
     Guardian ad Litem, MARIBEL
13   HERNANDEZ,                                   **ORDER   ON   TULARE   YOUTH
                                                  DEFENDANTS' F.R.Civ.P. 12 MOTION TO**
14                    Plaintiff,                  **DISMISS**
                                                  (Doc. 70.)
15          vs.

16   YADIRA PORTILLO, et al,

17                    Defendants.
     _____/
18

19                              **INTRODUCTION**

20          Defendants Tulare Youth Service Bureau, Inc. ("Tulare Youth") and Adrian Marquez ("Mr.

21   Marquez") seek to dismiss as lacking necessary elements minor plaintiff AE's ("AE's") negligence

22   claims arising out of failure to remove AE from a foster care home prior to alleged sexual abuse by an

23   older boy in foster care with AE. AE responds that his operative Third Amended Complaint ("TAC")

24   alleges that there is "more than a sheer possibility" that Tulare Youth and Mr. Marquez (collectively the

25   "Tulare Youth defendants'") acted unlawfully. This Court considered the Tulare Youth defendants'

26   F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the June 21, 2010 hearing, pursuant

27   to Local Rule 230(g). For the reasons discussed below, this Court DENIES dismissal of the negligence

28   claims against the Tulare Youth defendants.

                                               1

1

## BACKGROUND[1]

2

### The Relevant Parties

3      AE is a boy and was born in 1998.  He was age nine at the time of the events at issue.  Maribel

4  Hernandez ("Ms. Hernandez") is AE's mother and guardian ad litem for this action.

5      Defendant Tulare Youth is a California corporation which employed therapist Mr. Marquez.

6

### AE's Foster Care

7      On September 4, 2008, former defendant Tulare County took "legal and physical custody and

8  control" of AE from Ms. Hernandez.  Former defendant Family Builders Foster Care, Inc., a California-

9  licensed foster family agency,  placed AE with foster father Doe 51 and foster mother Doe 52 in their

10  home where a then 17-year-old boy ("older boy") resided in Doe 51 and 52's foster care.  Defendant

11  Heidi Williams was the social worker for the older boy and knew that the older boy "was a dependent

12  of the Court and on probation" and "resided in the same foster home and had the same foster parents"

13  as AE.

14

### The Older Boy's Abuse Of AE

15      On November 5, 2008, a "reporting party" informed defendant Tulare County social workers

16  Yadira Portillo ("Ms. Portillo") and Courtney Wampler ("Ms. Wampler") that the older boy had hit AE

17  on the chest and that AE had a 3½ by five-inch bruise on his left shoulder.  At that time, AE informed

18  CWA Felix ("Ms. Felix")[2] that two weeks prior, AE had witnessed the older boy stealing money from

19  a foster parent and reported the theft to the foster parent.  AE further informed Ms. Felix that the older

20  boy "socked" AE in the face and "threatened" AE.

21      Ms. Portillo and Ms. Wampler photographed AE's bruise.  A foster parent informed Ms. Portillo

22  and Ms. Wampler that the older boy "was a dependent of the Court and on probation."  The foster parent

23  also informed Ms. Portillo and Ms. Wampler that on November 4, 2008, AE had informed the foster

24  parent that the older boy "was taking too long in the shower."  When the foster parent wiggled the

25  bathroom door, the older boy "cursed her because he believed it was Plaintiff who was wiggling the

26
27  [1]      The factual recitation is derived generally from the TAC, the target of the Tulare Youth defendants' challenges.

28  [2]      The TAC merely identifies Ms. Felix as a Tulare County employee and does not identify her position.

1   door."

2   On November 20, 2008, AE's mother Ms. Hernandez stated to Ms. Felix that her two younger

3   children (who apparently were placed in a different foster home) "were dressed nicely all of the time,

4   but that Plaintiff was not" and that AE "did not want to talk to her about what was really going on in the

5   foster placement." Ms. Hernandez requested "that she would like Plaintiff to be moved from his current

6   foster placement to different foster placement."

7   On November 25, 2008, former defendant Crystal Soto, M.D. ("Dr. Soto"), informed social

8   worker supervisor Prudence Morris ("Ms. Morris"), a former defendant, by telephone that during an

9   SCIU evaluation, AE stated to Dr. Soto that the older boy "would enter the bathroom [as AE used it],

10  tell Plaintiff to hurry up, and curse Plaintiff." AE informed Ms. Portillo and Ms. Wampler that the older

11  boy "would unlock the bathroom door using his nail and threatened to 'kick [AE's] ass'" and that the

12  foster parent "was aware of this because he had talked to the older boy." Ms. Portillo and/or Ms.

13  Wampler's "remedy was to instruct Plaintiff to use the bathroom downstairs."

14  Ms. Portillo and Ms. Wampler denied AE's request to telephone Ms. Hernandez and informed

15  AE that he could write Ms. Hernandez but that his letters would be reviewed before they were sent. As

16  such, AE "believed that any letter he might write to his mother would be reviewed by his foster parents."

17  On November 26, 2008, Ms. Portillo "followed up" with Mr. Marquez, AE's therapist, and

18  provided to the Tulare Youth defendants "all of the facts, information, knowledge and notice that she

19  had learned." The Tulare Youth defendants knew of the older boy's treatment of AE through AE's

20  disclosure during therapy sessions with Mr. Marquez. Mr. Marquez "stated that he felt there was a need

21  to place more responsibility on the foster mother in supervising the actions of the children in the home."

22  Mr. Marquez "indicated that he did not believe Plaintiff had been making allegations to seek attention,

23  but was instead minimizing the behavior of the alleged perpetrator, the 17 year old boy."

24  On December 5 or 6, 2008, the older boy "assaulted, battered, and sexually abused Plaintiff."

25  At all "relevant times," the older boy "threatened Plaintiff and instructed and ordered Plaintiff not to tell

26  anyone what had happened and not to report the assault, battery and sexual abuse." AE "did not report

27  assaults, batteries and sexual abuse until on or about December 12 and 15, 2008" because AE feared for

28  his safety.

## AE's Claims Against The Tulare Youth Defendants

The TAC alleges that Mr. Marquez "had a duty to be, and would ensure that he was, fully informed concerning all facts and circumstances regarding Plaintiff's placement and care." The TAC alleges that the Tulare Youth defendants "failed and refused to":

1.   "[C]ause Plaintiff to be removed from the foster home, but instead deliberately and intentionally chose to maintain and retain Plaintiff with said foster home";

2.   "[R]eport the abuse of Plaintiff to the proper authorities"; or

3.   "[T]ake any other necessary remedial or protective action."

The TAC alleges a (second) negligence claim against the Tulare Youth and other defendants that "Defendants . . . acted unreasonably and below the applicable standard of care" and "proximately caused the injuries and damages alleged herein." The TAC alleges that AE "suffered and incurred physical, sexual, mental, and emotional injuries, medical and counseling expenses, future medical and counseling expenses, continuing and future emotional injury and trauma, lost earning capacity, and harm to and loss of reputation."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The Tulare Youth defendants fault the negligence claim's failure to allege "any breach of duty" based on the absence of facts to apprize Mr. Marquez that AE "could be subject to a sexual assault." The Tulare Youth defendants challenge support for the proximate cause element in that "proper authorities" were aware of alleged bullying to result in no harm from the Tulare Youth defendants' alleged "failure to report the bullying."

AE responds that the TAC alleges sufficient facts to satisfy all elements of a negligence claim.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where

4

there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged."  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but ask it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

The Ninth Circuit Court of Appeals has summarized:

> But *Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.  "Asking for plausible grounds to infer" the existence of a claim for relief "does not impose a probability requirement at the pleading stage; it simply call for enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove that claim.

*Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to the Tulare Youth defendants challenges to the TAC.

6

**Negligence**

"To prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries." *John B. v. Superior Court,* 38 Cal.4th 1177, 1188, 137 P.3d 153 (2006) (citing *Wiener v. Southcoast Childcare Centers, Inc.,* 32 Cal.4th 1138, 1145, 12 Cal.Rptr.3d 615 (2004).

### *Duty And Breach*

The Tulare Youth defendants fault the negligence claim's failure to identify a breached duty and "how it was breached" given the claim's conclusory allegation that "[i]n engaging in the acts, conduct and omissions alleged herein, Defendants, and each of them, acted unreasonably and below the applicable standard of care." The Tulare defendants identify the apparent "premise of the negligence claim" as violation of a "statutory duty to report child abuse or neglect."

The Tulare Youth defendants note that the TAC alleges that Mr. Marquez' last contact with Tulare County was November 26, 2008 at which time Mr. Marquez was aware that:

1.   The older boy had hit AE, who had 3½ by five-inch bruise on his shoulder;

2.   The older boy had "socked" AE in the face and threatened AE when he informed a foster parent that the older boy had stolen money from the foster parent;

3.   The older boy had cursed the foster mother, thinking she was AE, when the foster mother wiggled the bathroom door;

4.   AE's two younger siblings were dressed more nicely than AE;

5.   The older boy entered the bathroom as AE used it, told AE to hurry and cursed at AE; and

6.   The older boy unlocked the bathroom door and threatened to kick AE's ass.

The Tulare Youth defendants argue that an alleged breach of duty "turns on whether these facts give rise to a mandatory duty to report the above conduct to the proper authorities."

AE responds that the Tulare defendants ignore that Mr. Marquez' "special relationship" as AE's therapist gave rise to "common law duty to provide reasonable and non-negligent care and treatment." A therapist is held to "that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of [that professional specialty] under similar circumstances." *Tarasoff v. Regents*

1     *of University of California*, 17 Cal.3d 425, 438, 131 Cal.Rptr. 14 (1976) (citations omitted).

2          There is no doubt that Mr. Marquez' role as AE's therapist gives rise to common law duties.

3          AE further contends that the TAC adequately alleges that Mr. Marquez was subject to mandatory

4 duties.

5          California Penal Code section 11166(a) addresses mandatory reporting of child abuse or neglect

6 and requires a "mandated reporter" to "make a report to an agency . . . whenever the mandated reporter,

7 in his or her professional capacity or within the scope of his or her employment, has knowledge of or

8 observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child

9 abuse or neglect." California Penal Code section 11165.6 excludes from "child abuse or neglect" "a

10 mutual affray between minors." "'[R]easonable suspicion' means that it is objectively reasonable for

11 a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position,

12 drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect."

13 Cal. Pen. Code, § 11166(a)(1). California Penal Code section 11165.9 requires mandated reports of

14 child abuse to be made to law enforcement authorities.

15          The Tulare Youth defendants note that the TAC indicates that they were aware of no sexual

16 abuse or related conduct prior to November 26, 2008 and that at best the older boy "bullied" AE. The

17 Tulare Youth defendants point out that Tulare County was apprized given that Ms. Portillo "relayed

18 these facts" to Mr. Marquez. The Tulare Youth defendants conclude they lacked a legal duty to further

19 report "child abuse or neglect" in that Tulare County was aware of the matter and empowered to address

20 it.

21          The Tulare Youth defendants are correct that the gist of the negligence claim against them is that

22 they failed to report AE's abuse to proper authorities. There is no doubt that Mr. Marquez had a duty

23 to report "child abuse or neglect." The question arises whether the older boy's pre-December 2008

24 conduct toward AE amounted to child abuse or neglect. In their opening papers, the Tulare Youth

25 defendants fail to mention that child abuse or neglect includes "physical injury . . . inflicted by other than

26 accidental means upon a child by another person." Cal. Pen. Code, § 11165.6. The Tulare Youth

27 defendants characterize the older boy's conduct as "a mutual affray between minors." However, the

28 TAC suggests that the older boy's conduct was one-sided and not mutual. Given the TAC's allegations,

1    the issue of a "mutual affray" is factual and beyond this current motion.

2            Moreover, under California Penal Code section 11165.6, "child abuse or neglect" includes "the

3    willful harming or injuring of a child or the endangering of the person or health of a child, as defined

4    in Section 11165.3."  California Penal Code section 11165.3 defines "the willful harming or injuring of

5    a child or the endangering of the person or health or a child" to include "a situation in which any person

6    willfully causes or permits any child to suffer, or inflicts thereon, unjustifiable physical pain or mental

7    suffering."

8            The TAC alleges that the older boy, "another person," inflicted physical injury on AE "by other

9    than accidental means" and "willfully cause[d]" "unjustifiable pain or mental suffering."  The TAC

10   alleges that Mr. Marquez was aware of several pre-December 2008 events which equate to the older's

11   infliction of physical injury on AE and willful cause of AE's unjustifiable pain or mental suffering to

12   satisfy reasonable suspicion of AE's abuse.  The Tulare Youth defendants' comments that the TAC fails

13   to allege prior sexual abuse or that AE "was a likely victim of a serious sexual assault" are unavailing

14   and address factual issues beyond this current motion.

15           AE is correct that the TAC alleges "a pattern that would put a reasonable therapist on notice that

16   his patient was in danger."[3]  As such, the TAC clears the duty and breach pleading hurdles in that Mr.

17   Marquez allegedly failed to fulfill observation and reporting duties to render such failures a breach.  In

18   their reply papers, the Tulare Youth defendants misconstrue the applicable to duty as one to effectuate

19   "corrective action" in that the TAC's facts create a reasonable inference that Mr. Marquez was or should

20   have been aware of AE's abuse and failed to report it.  Moreover, the mandated reporter must report to

21   law enforcement authorities.  Nothing suggests that the social workers qualify as such.

22                                            *Proximate Cause*

23           The Tulare Youth defendants argue that the TAC "comes up short as to the proximate cause

24   element" of negligence.  The Tulare Youth defendants explain that when multiple defendants allegedly

25   cause harm, proximate cause analysis focuses on whether a defendant's conduct was a "material element

26   _____

27           [3]         Sufficient pleading of reasonable suspicion is bolstered by the allegation that Mr. Marquez "indicated that
     he did not believe Plaintiff had been making allegations to seek attention, but was instead minimizing the behavior of the
28   alleged perpetrator, the 17 year old boy."

1   and a substantial factor" in bringing about the harm.  *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1049, 1
2   Cal.Rptr.2d 913 (1991).

3          The Tulare Youth defendants argue that given that Tulare County through Ms. Portillo relayed
4   alleged bullying to Mr. Marquez, nothing would be accomplished "to require him to parrot the exact
5   same information back in a 'report.'" The Tulare Youth defendants contend that failure to "make such
6   a superfluous report" was not the proximate cause of AE's injuries given that Tulare County "already
7   had all the pertinent information in hand."

8          The problem for the Tulare Youth defendants is that they assume that Tulare County is the
9   mandated recipient of a report of child abuse or neglect.  As noted above, California Penal Code section
10   11165.9 requires mandated reports of child abuse to be made to law enforcement authorities.   Mr.
11   Marquez' alleged failure to report to law enforcement authorities prevents dismissal, especially given
12   reasonable inferences from the TAC that had Mr. Marquez properly reported, law enforcement would
13   have interceded on AE's behalf.  The TAC alleges sufficient facts to demonstrate that, using AE's
14   words, "the only reasonable recourse is to make the report to law enforcement."

15                                   **CONCLUSION AND ORDER**

16          For the reasons discussed above, this Court DENIES dimissal of the negligence claims against
17   the Tulare Youth defendants.

18          IT IS SO ORDERED.

19   **Dated:   June 11, 2010**                        _____/s/ Lawrence J. O'Neill_____
20                                               UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28