IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AE, a minor, by and through his Guardian ad Litem, MARIBEL HERNANDEZ,<br><br>Plaintiff,<br><br>vs.<br><br>YADIRA PORTILLO, et al.,<br><br>Defendants.<br>_____/ | CASE NO. CV F 09-2204 LJO DLB<br><br>**ORDER ON TULARE COUNTY DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS THIRD AMENDED COMPLAINT** (Doc. 72.) |

**INTRODUCTION**

Three defendant County of Tulare ("County") social workers seek to dismiss as lacking sufficient facts minor plaintiff AE's ("AE's") deliberate indifference and negligence claims arising out of failure to remove AE from a foster care home prior to alleged sexual abuse by an older boy in foster care with AE. AE contends that his claims survive in that they allege "more than a sheer possibility" that the social workers "acted unlawfully" and enough facts "to raise a reasonable expectation that discovery will reveal evidence" to prove his claims. This Court considered the defendant social workers' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the July 12, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES dismissal of AE's claims against the defendant County social workers.

# BACKGROUND[1]

## The Relevant Parties

AE is a boy and was born in 1998. He was age nine at the time of the events at issue. Maribel Hernandez ("Ms. Hernandez") is AE's mother and guardian ad litem for this action.

Defendants Yadira Portillo ("Ms. Portillo"), Courtney Wampler ("Ms. Wampler") and Adele Felix ("Ms. Felix")[2] are County social workers and will be referred to collectively as the "County defendants."

## AE's Foster Care

On September 4, 2008, the County took "legal and physical custody and control" of AE from Ms. Hernandez. Former defendant Family Builders Foster Care, Inc., a California-licensed foster family agency, placed AE with foster father Doe 51 and foster mother Doe 52 in their home where a then 17-year-old boy ("older boy") resided in Doe 51 and 52's foster care. Defendant Heidi Williams was the social worker for the older boy and knew that the older boy "was a dependent of the Court and on probation" and "resided in the same foster home and had the same foster parents" as AE.

## The Older Boy's Abuse Of AE

On November 5, 2008, a "reporting party" informed Ms. Portillo and Ms. Wampler that the older boy had hit AE on the chest and that AE had a 3½ by five-inch bruise on his left shoulder. At that time, AE informed Ms. Felix that two weeks prior, AE had witnessed the older boy stealing money from a foster parent and reported the theft to the foster parent. AE further informed Ms. Felix that the older boy "socked" AE in the face and "threatened" AE.

Ms. Portillo and Ms. Wampler photographed AE's bruise. A foster parent informed Ms. Portillo and Ms. Wampler that the older boy "was a dependent of the Court and on probation." The foster parent also informed Ms. Portillo and Ms. Wampler that on November 4, 2008, AE had informed the foster parent that the older boy "was taking too long in the shower." When the foster parent wiggled the

---

[1] The factual recitation is derived generally from AE's operative Third Amended Complaint ("TAC"), the target of the defendant social workers' challenges.

[2] The TAC identifies Ms. Felix as "CWA Felix." The TAC merely identifies the County defendants as County employees without identifying their positions. Based on the County defendants' papers, this Court surmises that the County defendants are social workers.

bathroom door, the older boy "cursed her because he believed it was Plaintiff who was wiggling the door."

On November 20, 2008, AE's mother Ms. Hernandez stated to Ms. Felix that her two younger children (who apparently were placed in a different foster home) "were dressed nicely all of the time, but that Plaintiff was not" and that AE "did not want to talk to her about what was really going on in the foster placement." Ms. Hernandez requested "that she would like Plaintiff to be moved from his current foster placement to different foster placement."

On November 25, 2008, former defendant Crystal Soto, M.D. ("Dr. Soto"), informed social worker supervisor Prudence Morris ("Ms. Morris"), a former defendant, by telephone that during an SCIU evaluation, AE stated to Dr. Soto that the older boy "would enter the bathroom [as AE used it], tell Plaintiff to hurry up, and curse Plaintiff." AE informed Ms. Portillo and Ms. Wampler that the older boy "would unlock the bathroom door using his nail and threatened to 'kick [AE's] ass'" and that the foster parent "was aware of this because he had talked to the older boy." Ms. Portillo and/or Ms. Wampler's "remedy was to instruct Plaintiff to use the bathroom downstairs."

Ms. Portillo and Ms. Wampler denied AE's request to telephone Ms. Hernandez and informed AE that he could write Ms. Hernandez but that his letters would be reviewed before they were sent. As such, AE "believed that any letter he might write to his mother would be reviewed by his foster parents."

On November 26, 2008, Ms. Portillo "followed up" with defendant Adrian Marquez ("Mr. Marquez"), AE's therapist, and provided to Mr. Marquez and his employer defendant Tulare Youth Service Bureau, Inc. (collectively the "Tulare Youth defendants") "all of the facts, information, knowledge and notice that she had learned." The Tulare Youth defendants knew of the older boy's treatment of AE through AE's disclosure during therapy sessions with Mr. Marquez. Mr. Marquez "stated that he felt there was a need to place more responsibility on the foster mother in supervising the actions of the children in the home." Mr. Marquez "indicated that he did not believe Plaintiff had been making allegations to seek attention, but was instead minimizing the behavior of the alleged perpetrator, the 17 year old boy."

On December 5 or 6, 2008, the older boy "assaulted, battered, and sexually abused Plaintiff." At all "relevant times," the older boy "threatened Plaintiff and instructed and ordered Plaintiff not to tell

3

anyone what had happened and not to report the assault, battery and sexual abuse." AE "did not report assaults, batteries and sexual abuse until on or about December 12 and 15, 2008" because AE feared for his safety.

### AE's Claims Against The County Defendants

The TAC alleges that "Defendants,[3] and each of them, had a special relationship under both federal and sate law with Plaintiff AE such that Defendants had a ministerial and non-delegable duty to protect AE." The TAC alleges that despite knowledge of the above facts, "Defendants failed and refused to remove Plaintiff from the foster home, but instead deliberately and intentionally chose to maintain and retain Plaintiff with said foster home."

The TAC alleges a (first) deliberate indifference claim pursuant to 42 U.S.C. § 1983 ("section 1983") that the County defendants violated the Fourteenth Amendment's due process clause and "had a special relationship with Plaintiff AE such that Defendants had a duty to protect AE." The TAC alleges a (second) negligence claim that the County defendants "are legally responsible" for damages pursuant to California Government Code section 820(a). The TAC alleges that AE "suffered and incurred physical, sexual, mental, and emotional injuries, medical and counseling expenses, future medical and counseling expenses, continuing and future emotional injury and trauma, lost earning capacity, and harm to and loss of reputation."

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The County defendants fault TAC's absence of facts "to cross the threshold from conceivable to plausible" to support the deliberate indifference and negligence claims.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

---

[3] The TAC neither identifies nor defines "Defendants," which presumably refers collectively to all defendants which the TAC names.

4

*Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

The Ninth Circuit Court of Appeals has summarized:

> But *Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden. "Asking for plausible grounds to infer" the existence of a claim for relief "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove that claim.

*Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to the County defendants challenges to AE's

claims.

**Deliberate Indifference**

The County defendants fault the TAC's failure to allege conduct to establish their "plausible deliberate indifference." The County defendants attribute the TAC to allege that they deprived AE of his Fourteenth Amendment rights because they "erroneously retained AE in a home that put him at risk of molest" by the older boy.

AE responds that dismissal of the deliberate indifference claim "at the pleading stage would be inappropriate given the circumstantial evidence alleged" in the TAC.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

The County defendants rely on *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195-197, 109 S.Ct. 998 (1989), where the U.S. Supreme Court held that a state owed no duty to child whose abuse it was investigating to protect him from beating by his father:

> But nothing in the language of the Due Process Clause itself requires the State

>to protect the life, liberty, and property of its citizens against **invasion by private actors**. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression," *Davidson v. Cannon, supra*, 474 U.S., at 348, 106 S.Ct., at 670; *see also Daniels v. Williams, supra*, 474 U.S., at 331, 106 S.Ct., at 665 (""to secure the individual from the arbitrary exercise of the powers of government,"" and "to prevent governmental power from being 'used for purposes of oppression'") (internal citations omitted); *Parratt v. Taylor*, 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result) (to prevent the "affirmative abuse of power"). Its purpose was to protect the people from the State, **not to ensure that the State protected them from each other**. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.
>
>. . . If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the **State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.** As a general matter, then, we conclude that a **State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause**. (Bold added.)

Nonetheless, there are exceptions to the general rule that a state's failure to protect against private violence does not violate the due process clause. The "special relationship" exception provides that "when a State takes a person into its custody and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058-1059 (9th Cir. 1998), *cert. denied*, 526 U.S. 1038, 119 S.Ct. 1333 (1999); *see Estate of Amos ex rel. Amos v. City of Page, Az.*, 257 F.3d 1086, 1090 (9th Cir. 2001). In addition, the second exception to the *DeShaney* rule – the "danger creation" exception – "exists where the state affirmatively places the plaintiff in a dangerous situation." *Huffman*, 147 F.3d at 1059; *see Estate of Amos, Az.*, 257 F.3d at 1091. The "'danger creation' basis for a claim . . . necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2442 (1993).

To examine whether a state actor "affirmatively places an individual in danger," a court examines whether the state actor "left the person in a situation that was more dangerous than the one in which they found him." *Munger v. City of Glasgow*, 227 F.3d 1082, 1086 (9th Cir. 2000); *see Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006). A court determines whether the state actor's affirmative

conduct placed the plaintiff "in danger that she otherwise would not have faced." *Kennedy*, 439 F.3d at 1063. In addition, a court must "decide related issues of whether the danger to which [the state actor] exposed [plaintiff] was known or obvious, and whether he acted with deliberate indifference to it." *Kennedy*, 439 F.3d at 1064. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997). "Whether [an] official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970 (1994).

The County defendants challenge the TAC's allegations of a "special relationship," "danger creation theory," or that the County defendants "otherwise exposed AE to the foster home." The County defendants argue that the TAC's allegations are limited to that the County defendants "knew that AE had been removed from custody, and that they each transferred AE to the foster home." The County defendants argue that the TAC fails to allege that they were deliberately indifferent in failing to remove AE from the foster home prior to the older boy's December 5 or 6, 2008 abuse in the absence of allegations that AE was placed in an unlicensed foster home, minimum contacts were not made, or there was a failure to respond to problems in the foster home. The County defendants summarize that the TAC alleges merely that they "were on notice that there may have been issues" between AE and the older boy.

The County defendants fault the TAC's reliance on allegations that on November 5, 2008, Ms. Portillo and Ms. Wampler were informed that the older boy had bruised AE and that AE told Ms. Felix that the older boy had "socked" AE in the face after AE reported the older boy's theft of a foster parent. The County defendants note that the bruising occurred two months after AE's placement in the foster home, Ms. Portillo and Ms. Wampler investigated the incident, photographed AE's bruise, and spoke to the foster parent, and AE did not request removal from the foster home. The County defendants characterize the bruise as "an isolated incident" and argue an incorrect decision to retain AE in the foster home does not equate to deliberate indifference.

The County defendants further fault the TAC's allegation that on November 25, 2008, AE informed Ms. Portillo and Ms. Wampler that the older boy unlocked the bathroom door and threatened

9

to "kick [AE's] ass." The County defendants attempt to mitigate the allegations by noting that Ms. Portillo and Ms. Wampler spoke to AE and to his therapist Mr. Marquez. The County defendants take solace in allegations that AE talked to the County defendants "about problems in the home" and in the absence of allegations that Mr. Marquez indicated that AE risked sexual abuse or that AE should be removed from the foster home.

As to the County defendants, the TAC's salient allegations are:

1. As of November 5, 2008, Ms. Portillo and Ms. Wampler knew that:
   a. The older boy had hit AE on the chest and that AE had a 3½ by five-inch bruise on his left shoulder;
   b. The older boy was on probation and a court dependent; and
   c. The older boy had cursed a foster parent thinking it was AE;
2. As of November 5, 2008, Ms. Felix knew that the older boy had "socked" AE in the face and had "threatened" AE;
3. As November 20, 2008, Ms. Felix knew that AE did not want to talk to Ms. Hernandez about what occurred in the foster home and that Ms. Hernandez requested that AE be moved to a different foster home;
4. As of November 25, 2008, Ms. Portillo and Ms. Wampler knew that the older boy had unlocked the bathroom door and threatened to kick AE's "ass"; and
5. As of November 26, 2008, Ms. Portillo knew from Mr. Marquez that AE did not make allegations to seek attention but minimized the older boy's conduct.

AE provides no alleged factual or legal support that the County defendants' roles or conduct created a special relationship with AE. There are no allegations that the County defendants acted as therapists or in a similar position of heightened trust with AE. As such, attention turns to whether the TAC raises inferences that the County defendants left AE is a more dangerous position than he otherwise would not have faced or where deliberately indifferent to a known or obvious danger facing AE.

The gist of the TAC is that the County defendants knew of the older boy's escalating misconduct toward AE but refrained to limit his exposure to such conduct, including AE's removal from the foster care home. The TAC raises inferences that the older boy continued to threaten and menace AE to

suggest that AE faced increasing exposure to physical harm, although perhaps not sexual abuse. The TAC alleges facts of an increasing perceived danger to AE and the absence of the County defendants' action to address it. With their nitpicks, the County defendants unreasonably attempt to hold AE to an unsubstantiated standard to allege "all facts necessary to carry the plaintiff's burden." *See Al-Kidd*, 580 F.3d at 977.[4] Whether the County defendants are guilty of deliberate indifference will depend on development of the facts but at this stage, the TAC alleges just enough to avoid dismissal of the deliberate indifference claim against the County defendants.

## Negligence

The County defendants challenge the TAC's failure to allege breach of a mandatory duty and "source for a duty to move AE from his foster home." The County defendants also invoke discretionary immunity.

AE argues that the County defendants are not entitled to discretionary immunity and urges this Court to apply the same analysis to deny dismissal of the claims against the Tulare Youth defendants.

### *Discretionary Immunity*

Under the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., "a public employee is liable for injury caused by his act or omission to the same extent as a private person," "[e]xcept as otherwise provided by statute (including Section 820.2)." Cal. Gov. Code, § 820(a). A public employee's liability under the Claims Act "is subject to any defenses that would be available to the public employee if he were a private person." Cal. Gov. Code, § 820(b). "[S]tatutory liabilities are subordinated to statutory immunities." *Universal By-Products, Inc. v. City of Modesto*, 43 Cal.App.3d 145, 154, 117 Cal.Rptr. 525 (1974).

California Government Code section 820.2 addresses a public employee's exercise of discretion and provides:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

The County defendants argue that they are entitled to "discretionary immunity for their actions

---

[4] Moreover, the County defendants' apparent reliance on qualified immunity is unavailing without sufficient factual development.

in connection with the provision of child welfare services." The County defendants note that the TAC admits that they "spoke to AE, spoke to the foster parents, took pictures, spoke to AE's therapist, and offered solutions."

AE argues that section 820.2 discretionary immunity applies to "policy making decisions," not "operational" or "ministerial" decisions at issue here. AE points to *Caldwell v. Montoya*, 10 Cal.4th 972, 981, 42 Cal.Rptr.2d 842 (1995), where the California Supreme Court explained:

> . . .a "workable definition" of immune discretionary acts draws the line between "planning" and "operational" functions of government. (*Johnson, supra*, 69 Cal.2d at pp. 793, 794.) Immunity is reserved for those " basic policy decisions [which have] ... been [expressly] committed to coordinate branches of government," and as to which judicial interference would thus be "unseemly." ( *Id.* at p. 793, italics in original.) Such "areas of quasi-legislative policy-making . . . are sufficiently sensitive" (*id.* at p. 794) to call for judicial abstention from interference that "might even in the first instance affect the coordinate body's decision-making process" (*id.* at p. 793).
>
> On the other hand, said *Johnson*, there is no basis for immunizing lower-level, or "ministerial," decisions that merely implement a basic policy already formulated. (*Johnson, supra*, 69 Cal.2d at p. 796.) Moreover, we cautioned, immunity applies only to deliberate and considered policy decisions, in which a "[conscious] balancing [of] risks and advantages . . . took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. [Citations]." ( *Id.* at p. 795, fn. 8.)

AE analogizes the County defendants' conduct to that of a public defender in *Barner v. Leeds,* 24 Cal.4th 676, 691-692, 102 Cal.Rptr.2d 97 (2000), where the California Supreme Court affirmed reversal of summary judgment for a public defender sued for malpractice:

> In sum, the actions of a deputy public defender in representing an assigned client in a criminal action generally do not involve the type of basic policy decisions that our past decisions have held are within the scope of the immunity afforded by section 820.2. Although such legal representation entails difficult choices among complex alternatives and the exercise of professional skill, for purposes of section 820.2 the attorney's actions ordinarily involve operational judgments that implement the initial decision to provide representation to the client. Holding deputy public defenders accountable at law for legal malpractice in this context does not result in unwarranted judicial interference in the affairs of the other branches of government, but rather simply subjects these public employees to the same principles of tort law applicable to private attorneys performing identical professional services in the same type of proceedings.

A fellow judge of this Court has explained that "for § 820.2 to apply, the employee must have actually exercised discretion and must have made a considered decision." *Garcia ex rel. Shepard v. Gonzalez*, 2006 WL 3457227, at *10 (E.D. Cal. 1006). "Where the allegations do not affirmatively show a considered decision, dismissal of the complaint is not appropriate." *Garcia*, 2006 WL 3457227,

at *10. "There is no immunity 'if the injury . . . results, not from the employee's exercise of discretion vested in him to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *McCorkle v. City of Los Angeles*, 70 Cal.2d 252, 261, 74 Cal.Rptr. 389, 396 (1969)).

AE argues that at this pleading stage, there is no allegation that the County defendants "actually exercised any discretion." AE continues that the County defendants' "overly broad interpretation of section 820.2" would apply immunity to conduct for which the California Supreme Court does not intend.

At this pleading stage, this Court is not prepared to conclude that California Government Code section 820.2 provides discretionary immunity to the County defendants given the TAC's reference to the County defendants' lower-level, ministerial actions rather than policymaking decisions. The County defendants point to no on-point authority to extend discretionary immunity to the extent they seek. In *Alicia T. v. County of Los Angeles*, 222 Cal.App.3d 869, 882-883, 271 Cal.Rptr. 513 (1990), the California Court of Appeal considered alleged wrongful removal of a child from parental custody, not retention of a foster child in a particular foster home. Although *Becerra v. County of Santa Cruz,* 68 Cal.App.4th 1450, 1466, 81 Cal.Rptr.2d 165 (1998), addressed, in limited part, failure to discontinue foster placement, its facts are dissimilar to those at hand and did not remotely address foster child on foster child violence, a situation unique to the facts alleged here. Moreover, the County defendants' reliance on cases addressing mandated services (including *County of Los Angeles v. Superior Court*, 102 Cal.App.4th 627, 125 Cal.Rptr.2d 637 (2002)), is misplaced*,* especially given the mandated reporting duties of California Penal Code section 11166 and related statutes to defeat the County defendants' points as to absence of duty. In short, the County defendants' points on discretionary immunity are unavailing. AE raises meritorious points that the County defendants' position is akin to Mr. Marquez' to impose similar duties and responsibilities on the County defendants to prevent dismissal of AE's negligence claim against them.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES dismissal of AE's claims against the County defendants and ORDERS the County defendants, no later than July 20, 2010, to file an answer to the

1  TAC.

2       IT IS SO ORDERED.

3  **Dated:   July 6, 2010**               /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE