1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

AE, a minor, by and through his Guardian
ad Litem, MARIBEL HERNANDEZ,

       Plaintiff,

  vs.

YADIRA PORTILLO, et al.,

       Defendants.

_____/

CASE NO. CV F 09-2204 LJO DLB

**ORDER ON DEFENDANT CEBALLOS'
F.R.Civ.P. 12 MOTIONS TO DISMISS**

## INTRODUCTION

     Defendant Sandra Ceballos ("Ms. Ceballos") seeks to dismiss minor plaintiff AE's ("AE's")
defamation/slander, negligence and punitive damages claims as insufficiently pled.  AE responds that
his claims against Ms. Ceballos satisfy necessary elements.  This Court considered Ms. Ceballos'
F.R.Civ.P. 12(b)(6) motion to dismiss[1] on the record and VACATES the June 14, 2011 hearing, pursuant
to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES AE's claims against Ms.
Ceballos.

---

[1]   Ms. Ceballos seeks to strike AE's punitive damages claims under F.R.Civ.P. 12(f).  However, this Court
will address AE's punitive damages claims under F.R.Civ.P. 12(b)(6) standards given the recent decision of *Whittlestone,
Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010) ("We therefore hold that Rule 12(f) does not authorize district
courts to strike claims for damages on the ground that such claims are precluded as a matter of law.")

# BACKGROUND[2]

## Summary

The FAC alleges claims arising out of AE's foster care during which he was allegedly sexually assaulted and abused by an older foster brother during late 2008. Ms. Ceballos had been AE's foster parent and allegedly made false statements that AE lied about the sexual assault and was the aggressor. In addition to the claims against Ms. Ceballos, the FAC alleges deliberate indifference and negligence claims against Tulare County ("County") social workers, AE's therapist, and the therapist's employer.[3]

## AE's Foster Care

The County took "legal and physical custody and control" of AE from his mother and guardian ad litem Maribel Hernandez ("Ms. Hernandez"). Defendants had "exclusive legal custody and control" of AE and "a special relationship . . . to protect AE." AE was transferred to Ms. Ceballos' foster care during an unidentified time period.

AE, then age 9, resided in a foster home with a then 17-year-old boy ("older boy"). Apparently in early November 2009, AE had witnessed the older boy steal money from an unidentified foster parent ("foster parent") and advised the foster parent of the theft. As a result, the older boy "socked" AE in the face and threatened AE, who suffered a 3½ by 5-inch bruise on his left shoulder. The foster parent informed defendant social workers that on November 4, 2008 the older boy took too long in the shower, the foster parent wiggled door, and the older boy cursed her because he believed AE wiggled the door.

On November 20, 2008, Ms. Hernandez stated to a defendant social worker that AE did not want to talk to Ms. Hernandez "about what was really going on in the foster placement." Ms. Hernandez requested AE's transfer to another foster placement.

On an unidentified date after November 25, 2008, AE informed defendant social workers that the older boy "would unlock the bathroom door using his nail and threaten to 'kick [AE's] ass.'" AE informed the defendant social workers that "his foster parent was aware of this because he had talked

---

[2]       The factual recitation is derived generally from AE's Fourth Amended Complaint ("FAC"), the target of Ms. Ceballos' challenges. The FAC is the first pleading to which Ms. Ceballos has responded.

[3]       The FAC makes multiple references to undefined "Defendants." This Court presumes such reference is to all defendants identified in the FAC.

to the older boy" and the foster parent's remedy "was to instruct Plaintiff to use the bathroom downstairs."  Defendants refused to allow AE to speak with Ms. Hernandez by telephone, and AE declined an offer to write Ms. Hernandez letters because he believed his "foster parents" would review the letters.

At an unidentified date after November 26, 2008, AE's defendant therapist stated that "he felt there was a need to place more responsibility on the foster mother in supervising the actions of the children in the home" and that the therapist "did not believe Plaintiff had been making allegations to seek attention, but was instead minimizing the behavior of the alleged perpetrator, the 17 year old boy."

On December 5 or 6, 2008, the older boy "assaulted, battered, and sexually abused" AE.  The older boy threatened and ordered AE "not to report the assault, battery and sexual abuse" and out of fear, AE did not do so until December 12 and 15, 2008.

Defendants had failed and refused to remove AE from the foster home and to take "necessary remedial and protective action."

**Claims Against Ms. Ceballos**

The FAC alleges a negligence claim against "all defendants" that they acted "unreasonably and below the applicable standard of care" to proximately cause AE's injuries and damages.

The FAC alleges against Ms. Ceballos and defendant Alejandro Puentes ("Mr. Puentes"), another foster parent, a defamation/slander claim that:

1.     On February 24, 2009, "Non-Defendant Celeste Abarca met with Plaintiff's new foster parent, who informed said Defendant[4] that Plaintiff stated he was afraid of his former foster mother, and pointed her out at school"; and

2.     When AE's "new foster parent" waited at school, Ms. Ceballos and/or Mr. Puentes "approached her and stated":

   a.     AE "lied about the sexual assault";

   b.     AE "did things" to the older boy;

   c.     "[S]he was concerned about the well being of the older, 17 year old boy";

---

[4] This Court presumes that use of "said Defendant" is in error and refers to "Non-Defendant Celeste Abarca."

1      3.     The "lied about the sexual assault" and "did things" statements "were slanderous per se,"

2               "cause[d] damage to Plaintiff's reputation," and "were false"; and

3      4.     Ms. Ceballos and/or Mr. Puentes "knew, or reasonably should have known" that the "lied

4               about the sexual assault" and "did things" statements were false and made "with malice

5               and with the intent to harm and injure" AE.

6      The complaint seeks to recover for AE's "physical, sexual, mental, and emotional injuries,

7 medical and counseling expenses," "lost earning capacity," "loss of reputation" as well as punitive

8 damages.

9
## DISCUSSION

10
### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

11      Ms. Ceballos faults the FAC's absence of facts to support defamation/slander, negligence and

12 punitive damages claims.

13      "When a federal court reviews the sufficiency of a complaint, before the reception of any

14 evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

15 a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

16 claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

17 *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

18 a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

19 theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

20 *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

21 of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

22      In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

23 the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

24 can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80

25 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

26 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

27 *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

28 assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

1   *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove

2   facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

3   alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

4   459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that

5   the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney,*

6   *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

7   A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

8   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

9   *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

10   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

11   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

12   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either

13   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

14   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

15   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

16   In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

17   explained:

18        . . . a complaint must contain sufficient factual matter, accepted as true, to "state
a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the

19   plaintiff pleads factual content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged. . . . The plausibility standard is not

20   akin to a "probability requirement," but it asks for more than a sheer possibility that a
defendant has acted unlawfully. (Citations omitted.)

21

22   After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

23   to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

24   must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

25   F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

26   The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

27        First, the tenet that a court must accept as true all of the allegations contained in
a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of

28   a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,

1    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
2    . Determining whether a complaint states a plausible claim for relief will . . . be a
     context-specific task that requires the reviewing court to draw on its judicial experience
3    and common sense. . . . But where the well-pleaded facts do not permit the court to infer
     more than the mere possibility of misconduct, the complaint has alleged – but it has not
4    "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

5        In keeping with these principles a court considering a motion to dismiss can
     choose to begin by identifying pleadings that, because they are no more than conclusions,
6    are not entitled to the assumption of truth. While legal conclusions can provide the
     framework of a complaint, they must be supported by factual allegations. When there are
7    well-pleaded factual allegations, a court should assume their veracity and then determine
     whether they plausibly give rise to an entitlement to relief.

8    *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

9        With these standards in mind, this Court turns to Ms. Ceballos' challenges to the FAC's claims.

10                                    **Defamation/Slander**

11       Ms. Ceballos contends that the defamation/slander claim fails to "specifically" attribute to her

12   an actionable statement and attributes to her statements which are vague, ambiguous, innocent on their

13   face and non-slanderous." AE responds that the alleged slanderous statements are "clear statements of

14   fact."

15       "The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d)

16   unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*,

17   40 Cal.4th 683, 720, 151 P.3d 1185 (2007) (internal quotation omitted).

18       Ms. Ceballos challenges the FAC's lumping her with Mr. Puentes as the makers of allegedly

19   defamatory statements. A plaintiff "must allege the basis of his claim against each defendant to satisfy

20   Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put

21   defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp.

22   1067, 1071 (N.D. Cal. 1988); *see Arikat v. JP Morgan Chase & Co.*, 430 F.Supp.2d 1013, 1020

23   (plaintiffs' defamation allegations "are insufficient in that they are ascribed to defendants collectively

24   rather than to individual defendants").

25       Ms. Ceballos argues that her alleged statements are not defamatory in that they are ambiguous

26   "statements of opinion or innocent on their face and insufficient to constitute slander." Ms. Ceballos

27   points to the absence of facts to indicate "extrinsic circumstances or that the words had a particular

28   meaning, or 'innuendo,' which makes them defamatory." When offending language is susceptible of

6

an innocent interpretation, it is not actionable per se, and in addition to an innuendo, the plaintiff must allege special damages by reason of the meaning gained from the publication. *Washer v. Bank of Amer. Nat'l. Trust & Sav. Ass'n*, 21 Cal.2d 822, 828, 136 P.2d 297 (1943), *overruled on other grounds*, *McLeod v. Tribune Pub. Co.*, 52 Cal.2d 536, 551, 343 P.2d 36 (1959).  "Where words or other matters are of ambiguous meaning, or are innocent on their face but defamatory in light of extrinsic circumstances (i.e., not defamatory 'per se'), the plaintiff must plead and prove that they were used in a particular meaning that makes them defamatory (the 'innuendo')."  5 Witkin, Sum. of Cal. Law, Torts, § 555, p. 811 (2005).  Ms. Ceballos faults the absence of allegations of "extrinsic circumstances which show the third person reasonably understood it in its derogatory sense."

AE responds that the FAC "specifically" identifies "the slanderous statements made, who made them (i.e., the two, and only the two, foster parents), and the falsity of all of the statements."  AE responds that the alleged slanderous statements are "clearly slanderous" without need of innuendo, inducement, or further explanation given that the context of the conversation involving AE and the older boy.

Ms. Ceballos raises a valid point that the FAC fails to distinguish the alleged defamation/slander of Ms. Ceballos and Mr. Puentes.  The FAC merely lumps them together and attributes the alleged slanderous statements to either or both of them.  Such pleading fails to satisfy F.R.Civ.P. 8(a)(2), and AE offers no meaningful points that the FAC distinguishes their alleged slanderous statements.  The defamation/slander claim is subject to dismissal with leave to amend for failure to segregate particular wrongs of Ms. Ceballos and Mr. Puentes.

Nonetheless, this Court disagrees with Ms. Ceballos that given the alleged slanderous statements are ambiguous.  Given the context which the FAC details, the alleged slanderous statement need no further extrinsic circumstances to delineate their meaning.  In the context of the FAC, Ms. Ceballos and/or Mr. Puentes allegedly claimed that AE lied about sexual assault and that AE was the sexual aggressor.  The meaning of the alleged slanderous statements is not ambiguous.  The only ambiguity is who made that alleged slanderous statements.

### Negligence

Ms. Ceballos challenges the FAC's absence of facts to support her alleged "active negligence"

in that AE seeks to impose liability on Ms. Ceballos for the older boy's "criminal acts."  Ms. Ceballos points to the absence of facts that she "participated in the assault or otherwise facilitated the assault." Ms. Ceballos argues that at most the FAC alleges that she "failed to prevent the alleged sexual assault" but lacks facts that "the third party criminal conduct was reasonably foreseeable" to impose a duty on her.

AE responds that he need not "allege each and everything that did not occur beyond Defendants' failure to perform its [sic] duty to protect Plaintiff."  AE champions the FAC's alleged facts that assault of AE was foreseeable to Ms. Ceballos based on the older boy's prior criminal conduct.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,* 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

Ms. Ceballos characterizes her alleged negligence as "nonfeasance," which is "the nonperformance of an act that should be performed." *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 114, n. 16, 11 Cal.Rptr.2d 468 (1992).  Ms. Ceballos notes that nonfeasance involving negligent supervision of minors requires "a heightened foreseeability standard."

An "adult who invites a minor into her home assumes a special relationship with the minor in light of the minor's vulnerability." *Margaret W. v. Kelley R.*, 139 Cal.App.4th 141, 153, 42 Cal.Rptr.3d 519 (2006). "The existence of a special relationship, however, is only the beginning of the analysis." *Margaret W.*, 139 Cal.App.4th at 152, 42 Cal.Rptr.3d 519. "[F]or there to be a duty to prevent third party criminal conduct, that conduct must be foreseeable." *Margaret W.*, 139 Cal.App.4th at 152, 42 Cal.Rptr.3d 519.

In *Margaret W.*, 139 Cal.App.4th at 152, 42 Cal.Rptr.3d 519, the California Court of Appeal explained in greater detail:

> But, despite that special relationship, the existence of a duty still requires that the harm be reasonably foreseeable, which requires that the defendant have actual knowledge of the assaultive propensities of the assailant. Defendants cannot be liable under a negligent supervision theory for nonfeasance based solely on constructive knowledge or information they should have known. . . .There is no per se rule of duty to every invitee, and there must be actual knowledge in addition to a special relationship. "To impose on an adult a duty to supervise and protect a female teenage invitee against sexual misconduct by a male teenage invitee, it is not enough to assert that [it is] conceivable the latter might engage in sexual misconduct during a brief absence of adult supervision. As we have already held, the imposition of such a duty of care requires evidence of facts from which a trier of fact could reasonably find that the defendant adult had prior actual knowledge of the teenage assailant's propensity to sexually molest other minors." (Citations and footnote omitted.)

Ms. Ceballos challenges the lack of facts that the older boy's alleged criminal conduct was foreseeable to her and that she "had actual knowledge of the risk of sexual assault to the plaintiff."

The FAC is unclear as to purported prior criminal conduct which provided Ms. Ceballos actual knowledge of the older boy's assaultive propensities. AE appears to rely on FAC allegations that the older boy hit AE in the chest, socked AE in the face after AE witnessed the older boy steal money, cursed at a foster parent thinking the foster parent was AE, and threatened to "kick [AE's] ass." The problem for AE is that the FAC fails to attribute knowledge of such matters to Ms. Ceballos or an identified foster parent. The FAC is unclear whether AE resided at Ms. Ceballos' home during these alleged warning events given the FAC's mere reference to "foster parent."

Moreover, although as a foster parent Ms. Ceballos may have assumed a special relationship with AE, the contours of such relationship are unclear with the FAC's vague allegations as to an unidentified foster parent. In turn, reasonable foreseeability remains unclear under the limited matters of which a "foster parent" was aware. The FAC appears to impose actual knowledge on Ms. Ceballos without

alleging facts from which Ms. Ceballos acquired such knowledge.  The FAC extrapolates limited facts to constitute Ms. Ceballos' actual knowledge of the older boy's alleged assaultive propensities.  Such extrapolation is insufficient to support a negligence claim against Ms. Ceballos to warrant dismissal of the negligence claim against her with leave to amend.

### Punitive Damages

The defamation/slander claim alleges that Ms. Ceballos made statements "with malice and with intent to harm and injure" AE.  The FAC's prayer seeks an award of punitive damages.  Ms. Ceballos seeks to dismiss the punitive damages claim in absence of specific facts to support its elements.

California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code, § 3294(a).  Section 3294(c)(1)–(3) defines:

1. "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

2. "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

3. "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

"Although the court will apply the substantive law embodied in section 3294, 'determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'" *Jackson v. East Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997).

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983).  "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976).  Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged

1  to support the allegation." *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

2         In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the

3  California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.  (Citations omitted.)

8  "Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other

9  adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v.*

10 *California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground*

11 *Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud

12 should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith*

13 *v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is

14 insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with

15 oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977)

16 ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently

17 insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section

18 3294").

19        Ms. Ceballos attributes the FAC to assert a conclusion of law as to malice with no facts of her

20 intent to injure or despicable conduct to create cruel and unjust hardship in conscious disregard of AE's

21 rights.  Ms. Ceballos points to the absence of facts that she made intentional misrepresentations or

22 committed deceit or concealment.  Ms. Ceballos notes the FAC's failure to allege facts to show her

23 intent to vex, injure or annoy.

24        AE offers nothing to support his punitive damages claim other than a general statement that

25 "[p]unitive damages are available in a defamation action where such knowing and intentional slanderous

26 and defamatory statements [sic] alleged and shown."

27        The FAC does not satisfy AE's own standard for punitive damages.  In the absence of facts to

28 support elements of punitive damages, AE may not rely on platitudes and generalities that punitive

damages are available in defamation cases.  Moreover, in the absence of a viable defamation/slander

action against Ms. Ceballos, a punitive damages claim against her necessarily fails.  As such, the FAC's

punitive damages claim against Ms. Ceballos is subject to dismissal without prejudice.

**Attempt At Amendment**

AE requests an attempt to amend given that the FAC is the first pleading to which Ms. Ceballos

has responded.  Despite the FAC's numerous deficiencies as to Ms. Ceballos and out of an abundance

of caution, this Court grants AE leave to amend the defamation/slander, negligence and punitive

damages claims against Ms. Ceballos.  If AE elects to amend such claims, this Court ADMONISHES

AE to cure the deficiencies, support the claims with sufficient facts consistent with the principles

discussed above, and refrain to pursue claims which lack factual or legal support.  A further amended

complaint must identify particular wrongs and facts attributable to Ms. Ceballos.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.     DISMISSES with leave to amend the defamation/slander, negligence and punitive

       damages claims against Ms. Ceballos;

2.     ORDERS AE, no later than June 17, 2011, to file and serve either:

       a.     A fifth amended complaint which complies with this order; or

       b.     Papers to voluntarily dismiss Ms. Ceballos; and

3.     ORDERS Ms. Ceballos, no later than July 5, 2011, to file and serve papers to respond

       to the fifth amended complaint if she remains as a defendant.

IT IS SO ORDERED.

**Dated:**     **June 2, 2011**                      _____/s/ Lawrence J. O'Neill_____
                                        UNITED STATES DISTRICT JUDGE

12