IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AE, a minor, by and through his Guardian ad Litem, MARIBEL HERNANDEZ, | CASE NO. CV F 09-2204 LJO DLB |
| Plaintiff, | **ORDER ON MOTION TO DISMISS THIRD-PARTY COMPLAINT** (Doc. 128.) |
| vs. | |
| YADIRA PORTILLO, et al., | |
| Defendants. | |
| _____/ | |
| AND THIRD-PARTY ACTION. | |
| _____/ | |

**INTRODUCTION**

Third-party defendant Family Builders Foster Care, Inc. ("Family Builders") seeks to dismiss the indemnity claims of third-party plaintiffs Yadira Portillo, Courtney Wampler and CWA Felix (collectively the "TP plaintiffs") arising from the alleged sexual battery of minor plaintiff AE ("AE"), a foster care child. The TP plaintiffs contend that Family Builders is contractually obligated to indemnify the TP plaintiffs for Family Builders' alleged wrongs giving rise to AE's negligence claim against the TP plaintiffs. This Court considered Family Builders' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the August 29, 2011 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES dismissal of the TP plaintiffs' indemnity claim but LIMITS its scope to Family Builders' alleged wrongdoing covered by the subject indemnity provision.

1

1

## BACKGROUND[1]

2

### Summary

3   The TP plaintiffs are employees of the Tulare County ("County"), Health and Human Services

4   Agency, Child Welfare Services.  Family Builders contracted with the County to provide foster care

5   services.  In 2008, at age 9, the County took custody of AE, who through Family Builders was placed

6   in the foster care of defendants Alejandro Puentes and Sandra Ceballos (collectively "foster parents").

7   The FAC alleges that during such foster care, AE was sexually assaulted and abused by a then 17-year-

8   old foster brother ("older boy") during late 2008.  The FAC alleges 42 U.S.C. § 1983 ("section 1983")

9   deliberate indifference and negligence claims against the TP plaintiffs, who seek indemnity from Family

10   Builders under the foster care services agreement between the County and Family Builders.  Family

11   Builders seeks to dismiss the TPC indemnity claim against Family Builders in that the subject indemnity

12   provision does not cover claims for the TP plaintiffs' negligence.

13

### Family Builders' Foster Care Services

14   As of November 6, 2007, Family Builders entered into with the County a foster services

15   agreement to, among other things, place children in certified foster homes, train certified foster parents,

16   supervise foster care placements, maintain weekly contact with foster children, and perform "services

17   associated with the placement and care of children in foster care."  Prior to August 2008, the County

18   requested Family Builders to place the older boy in foster care.  Family Builders placed the older boy

19   in the foster parents' home.  Family Builders agreed to provide "ongoing supervision and services" of

20   the older boy, including determination whether the foster parents "were adequately meeting" the older

21   boys' needs.

22   In September 2008, Family Builders placed AE in the foster parents' home along with the older

23   boy.  Family Builders "agreed to be responsible for the safety, security and care" of AE and "to perform

24   case management services" to meet AE's needs.

25

### AE's Claims Against The TP Plaintiffs

26   The older boy bullied, threatened and battered AE several times during late 2008.  The older

27

28   [1]      The factual recitation is derived generally from the TP plaintiffs' Third-Party Complaint ("TPC") and AE's Fifth Amended Complaint ("FAC").

boy's abuse culminated in early December with sexual battery of AE.  The gist of the FAC's claims
against the TP plaintiffs is that the TP plaintiffs "failed and refused to remove" AE from the foster home
despite their knowledge that:

1.    The older boy punched and hit AE at least twice a week to bruise AE;

2.    As of early November 2008, the older boy had assaulted AE to cause a 3½ by 5-inch
      bruise on AE's left shoulder;

3.    The older boy had punched AE in the mouth to cause a tooth to fall out;

4.    The older boy had cursed at a foster parent, thinking the foster parent was AE; and

3.    The older boy hassled AE when AE used the bathroom and had threatened to "kick
      [AE's] ass."

The FAC further faults the TP plaintiffs' refusal to allow AE to speak with his mother by telephone, and
AE declined an offer to write his mother because AE believed his "foster parents" would review the
letters.

The FAC alleges against the TP plaintiffs a (first) section 1983 claim that the TP plaintiffs "were
deliberately indifferent to the risk of harm" to AE and a (second) negligence claim.

### The TPC's Claims

With their TPC, the TP plaintiffs seek to pin fault on Family Builders' failure to meet AE's
needs.  The TPC alleges Family Builders' failures to report timely "unusual occurrences," to apprise
County employees "of the true nature and circumstances occurring at the foster home," to "provide
adequate assessment of high risk behaviors," "to respond to unusual occurrences in the home," "to
address inappropriate or potentially dangerous behaviors of children," to evaluate adequately the co-
placement of AE and the older boy, and to change AE's placement.  The TPC alleges that Family
Builders "knew of should have known that the 17 year old posed a risk of foreseeable harm, but failed
to take action necessary to prevent the harm."  The TPC concludes that AE's damages, if any, were a
"direct and proximate result" of Family Builders' wrongs.

To support indemnification by Family Builders, the TP plaintiffs point to the foster services
agreement's indemnity provision:

CONTRACTOR shall hold harmless, defend and indemnify COUNTY, its

3

1    agents, officers and employees from and against any liability, claims, actions, costs, damages or losses or any kind, including . . . injury to any person . . . **arising from, or**
2    **in connection with, the performance by CONTRACTOR or it agents, officers and employees under this Agreement.**"  (Uppercase in original; bold added.)[2]
3

4                                    **DISCUSSION**

5                **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

6       Family Builders seeks to dismiss the TPC in that the indemnity provision "provides only for
7 actions arising from the performance of Family Builders" and the FAC addresses the TP plaintiffs'
8 wrongs.  The TP plaintiffs fault Family Builders' ignorance of the TPC's "factual allegations."

9       "When a federal court reviews the sufficiency of a complaint, before the reception of any
10 evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether
11 a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the
12 claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*
13 *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either
14 a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal
15 theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*
16 *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency
17 of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

18       In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to
19 the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff
20 can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80
21 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that
22 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*
23 *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not
24 assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*
25 *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove
26 facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

27 _____

28       [2]     This Court will refer to this provision as the "indemnity provision."  The foster care services agreement identifies Family Builders as "Contractor."

alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).   A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to Family Builders' challenges to the TPC.

### Indemnity Provision's Scope And Application

Family Builders faults the TPC's absence of facts that the indemnity provision applies to the FAC.

An indemnity obligation "may arise by virtue of express contractual language establishing a duty

---

[3]     "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

in one party to save another harmless upon the occurrence of specified circumstances." *Bay Development, Ltd. v. Superior Court*, 50 Cal.3d 1012, 1029, 269 Cal.Rptr. 720 (1990). An indemnity claim based on an express contract to indemnify is "an express contractual indemnity claim." *Bay Development*, 50 Cal.3d at 1029, 269 Cal.Rptr. 720. When parties expressly contract for indemnity, "the extent of that duty must be determined from the contract." *Markley v. Beagle*, 66 Cal.2d 951, 961, 59 Cal.Rptr. 809 (1967).

An indemnity provision "is construed under the same rules as govern the interpretation of other contracts. Effect is to be given to the parties' mutual intent ([Cal. Civ. Code,] § 1636), as ascertained from the contract's language if it is clear and explicit ([Cal. Civ. Code,] § 1638). Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense. ([Cal. Civ. Code,]§ 1644)." *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal.4th 541, 552, 187 P.3d 424 (2008).

The California Supreme Court has further explained:

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ.Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. ( *Id.*, § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" ( *Id.*, § 1644), controls judicial interpretation. ( *Id.*, § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.

*Santisas v. Goodin*, 17 Cal.4th 599, 608, 951 P.2d 399 (1998).

"When the parties knowingly bargain for the protection at issue, the protection should be afforded." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 633, 119 Cal.Rptr. 449 (1975). Determination as to indemnity provision application "requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 632, 119 Cal.Rptr. 449 (1975).

Family Builders argues that the indemnity provision does not indemnify County employees, such as the TP plaintiffs, for their wrongs in that it indemnifies the County for liability "arising from, or in connection with, the performance by the Contractor." Family Builders points to the absence of TPC or FAC allegations as to "any performance by Family Builders or their [sic] agents, officers or employees."

1   Family Builders continues that to invoke the indemnity provision, "there must be action by Family
2   Builders, it agents, officers or employees."

3        The TP plaintiffs respond that they are identified "beneficiaries" of the indemnity provision. The
4   TP plaintiffs argue that the indemnity provision applies in that Family Builders certified the foster
5   parents' home and placed AE and the older boy in that home. The TP plaintiffs note that Family
6   Builders had sole discretion where to place AE and the older boy and that the TP plaintiffs merely placed
7   AE with Family Builders. The TP plaintiffs explain that pursuant to the foster services agreement, "the
8   County sought to transfer many of the duties normally reserved for the County Social Worker." The TP
9   plaintiffs identify such duties as foster parent training and certification, foster family selection and
10  placement, foster home supervision and monitoring, weekly visitations, reporting and addressing
11  "unusual incidents," and child removal as necessary.

12       There is no dispute that as County employees, the indemnity provision applies to the TP
13  plaintiffs. The parties dispute whether the TPC alleges wrongs to invoke the indemnity provision. The
14  gist of Family Builders' arguments is that since the FAC addresses only the TP plaintiffs' actions, the
15  indemnity provision is not invoked. In other words, Family Builders argues that it is not responsible for
16  the TP plaintiffs' negligence. However, the essence of the TPC is to indemnify the TP plaintiffs for
17  Family Builders' alleged failures of its foster care services agreement duties. Under the indemnity
18  provision, Family Builders indemnifies the TP plaintiffs for claims arising from Family Builders'
19  "performance" under the foster care services agreement. The TPC explicitly faults Family Builders'
20  performance to invoke the indemnity provision. Whether Family Builders' inadequately performed in
21  another issue beyond the pleadings.

22       Family Builders also argues that the TPC attempts to hold Family Builders liable under an agency
23  theory as principal of the foster parents. Family Builders contends that in the absence of facts of its
24  agency relationship with the foster parents, Family Builders in not subject to the indemnity provision.
25  Family Builders is correct that the TPC lacks facts to support an agency theory. However, the TPC does
26  not attempt to hold Family Builders liable through agency. As noted above, the TPC attempts to hold
27  Family Builders liable for its failures to perform under the foster care services agreement to invoke the
28  indemnity provision. In short, agency is not at issue.

**Active Vs. Passive Negligence**

Family Builders contends that the indemnity provision is "general" and does not cover the TP plaintiffs' "own negligent acts."

An indemnity clause which does not address an indemnitee's negligence is a "general" indemnity clause. *McCrary Const. Co. v. Metal Deck Specialists, Inc.*, 133 Cal.App.4th 1528, 1537, 35 Cal.Rptr.3d 624 (2005); *see Markley v. Beagle*, 66 Cal.2d 951, 962, 59 Cal.Rptr. 809 (1967). "While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's passive negligence, they will not be interpreted to provide indemnity if an indemnitee has been actively negligent." *McCrary Const*, 133 Cal.App.4th at 1537, 35 Cal.Rptr.3d 624. The "character of an indemnitee's negligence is ordinarily a question of fact for the jury." *Morgan v. Stubblefield*, 6 Cal.3d 606, 625, 493 P.2d 465 (1972).

In *Morgan*, 6 Cal.3d at 625, 493 P.2d 465, the California Supreme Court further explained active negligence to deny indemnity:

> . . . if a plaintiff seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge of or acquiescence in it, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he may not obtain indemnity. The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law.

Family Builders notes that if the TP plaintiffs seek indemnity for their own negligence, "the indemnity provision must clearly state that the indemnitor (Family Builders) agrees to not only hold [the TP plaintiffs] harmless for the indemnitor's action (Family Builders), but also to hold harmless the indemnitee [the TP plaintiffs]." Family Builders argues that the "facts plead in the FAC clearly are affirmative acts of negligence, which would relieve Family Builders of any liability."

The TP plaintiffs argue that the TPC does not seek indemnity based on the TP plaintiffs' negligence in that the "TPC alleges that AE's injuries were caused by [Family Builders'] negligence and/or failure to provide the services required of a Foster Family Agency." The TP plaintiffs point to the TPC's allegations that Family Builders certified, chose and supervised the foster home and was responsible to report unusual circumstances, to make weekly visits and to follow up as needed. In short, the TP plaintiffs attribute AE's alleged injuries to Family Builders' wrongs, which were beyond the TP

1  plaintiffs' control. The TP plaintiffs conclude that the TPC provides that the TP plaintiffs' conduct "did

2  not amount to active negligence."

3      As noted previously, the indemnity provision requires Family Builders to indemnify the TP

4  plaintiffs for liability "arising from, or in connection with" Family Builders' performance of the foster

5  care services agreement. The alleged wrongs of Family Builders and the TP plaintiffs are distinct but

6  overlap. The TPC faults Family Builders certification, selection and management of the foster parents.

7  The FAC faults TP plaintiffs' failure to remove AE after they gained information to suggest that the

8  older boy was a threat. The TP plaintiffs are entitled to indemnity to the extent AE seeks to hold them

9  responsible for wrongs attributable to Family Builders. The TPC seeks no more and does not attempt

10  to impose liability on Family Builders for the TP plaintiffs' active negligence or distinct wrongs.

11  Moreover, this Court disagrees with Family Builder's point that the TPC lacks "a factual basis for a

12  claim of indemnity." The TPC identifies Family Builders' foster care duties and alleged breaches to

13  culminate in the co-placement of AE and the older boy with the foster parents.

14      **Indemnity For Section 1983 Liability**

15      Family Builders argues that it cannot indemnify the TP plaintiffs for section 1983 liability

16  because Family Builders did not act "under the color of state law."

17      The "ultimate issue" to determine whether a person is subject to a section 1983 claim is whether

18  "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*,

19  457 U.S. 830, 838, 102 S.Ct. 2764 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102

20  S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). The U.S. Supreme Court has adopted a two-part test to

21  address whether infringement is attributable to the state:

22      Our cases have accordingly insisted that the conduct allegedly causing the deprivation
        of a federal right be fairly attributable to the State: These cases reflect a two-part

23      approach to this question of "fair attribution." First, the deprivation must be caused by
        the exercise of some right or privilege created by the State or by a rule of conduct

24      imposed by the state or by a person for whom the State is responsible. . . Second, the
        party charged with the deprivation must be a person who may fairly be said to be a state

25      actor. This may be because he is a state official, because he has acted together with or has
        obtained significant aid from state officials, or because his conduct is otherwise

26      chargeable to the State. Without a limit such as this, private parties could face
        constitutional litigation whenever they seek to rely on some state rule governing their

27      interactions with the community surrounding them.

28  *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744 (1982).

1    The TPC identifies Family Builders as a California corporation, that is, a private actor. "When

2  addressing whether a private party acted under color of law, we therefore start with the presumption that

3  private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical*

4  *Center,* 192 F.3d 826, 835 (9th Cir. 1999); *see Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992)

5  ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.");

6  *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir.1991) ("[P]rivate parties are not generally acting under

7  color of state law.")  "§ 1983 excludes from its reach merely private conduct, no matter how

8  discriminatory or wrong." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985

9  (1999) (citation and internal quotation marks omitted).

10    The TP plaintiffs concede "that a party cannot be indemnified for its own violations of another's

11  civil rights" to limit their indemnity "to the extent they are found liable under State Law." "[C]ourts are

12  not free to read a cause of action for indemnity into statutes where no statutory basis exists for such a

13  claim. . . . Therefore, any claims for indemnification against the third party defendants based directly

14  upon § 1983 are impermissible." *Banks v. City of Emeryville*, 109 F.R.D. 535, 539 N.D. Cal. 1985).

15  As a matter of law, Family Builders is not subject to indemnify the TP plaintiffs for section 1983

16  liability.

17                              **CONCLUSION AND ORDER**

18    As discussed above, the indemnity provision's scope is limited to alleged wrongdoing

19  attributable to Family Builders' performance of the foster care services agreement.  It does not cover the

20  TP plaintiffs' active negligence and violation of civil rights.  As such, this Court DENIES dismissal of

21  the TPC to the extent it seeks indemnity as to Foster Builders' performance of the foster care services

22  agreement and so LIMITS the extent of TPC's indemnity claims.

23    IT IS SO ORDERED.

24  **Dated:   August 24, 2011**              /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE

25

26

27

28

                                    11