IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AE, a minor, by and through his Guardian ad Litem, MARIBEL HERNANDEZ,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>YADIRA PORTILLO, et al.,<br><br>　　　　　Defendants.<br>　_____/ | CASE NO. CV F 09-2204 LJO DLB<br><br>**SUMMARY JUDGMENT DECISION**<br>(Doc. 141.) |

**INTRODUCTION**

Defendants Tulare Youth Service Bureau, Inc. ("Tulare Youth") and therapist Adrain Marquez ("Mr. Marquez") seek summary judgment on minor plaintiff AE's ("AE's") negligence claims arising out of failure to remove AE from a foster home prior to alleged sexual abuse by older boy in the foster home. AE filed a statement of non-opposition to summary judgment for Tulare Youth and Mr. Marquez (collectively "defendants"). This Court considered defendants' summary judgment motion on record[1] and VACATES the January 24, 2012 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS defendants summary judgment.

---

[1] In the absence of AE's opposition, this Court carefully reviewed and considered the entire record to determine whether defendants' summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper. This Court thoroughly reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate for summary judgment.

1

## BACKGROUND

### Summary

In 1998 at age nine, AE was placed in a foster home where a then 17-year-old boy ("older boy") resided. AE alleges that the older boy's behavior toward AE escalated from bullying to sexual abuse. Mr. Marquez worked with AE in Mr. Marquez' then position as a marriage and family therapist intern employed by Tulare Youth.[2] AE claims that defendants negligently failed to seek AE's removal from the foster home, to report the older boy's abuse to proper authorities, and to take other remedial or protective action. Defendants seek summary judgment in the absence of facts or law to support AE's negligence claims.

### Allegations As To AE's Foster Care[3]

Maribel Hernandez ("Ms. Hernandez") is AE's mother and guardian ad litem. On September 4, 2008, County of Tulare ("County") employees took legal custody of AE, and AE was placed in a foster home with the older boy whom AE identifies as "a dependent of the Court and on probation."

On November 5, 2008, two County employees became aware that the older boy had hit AE, who had a 3½ by 5-inch bruise on his shoulder. AE told County employees that two weeks earlier, the older boy had stolen money from his foster parents and that the older boy "socked him in the face and threatened him" after AE had informed the foster parents of the theft. County employees were also aware that the older boy had cursed out the foster mother (thinking she was AE) when the foster mother wiggled the bathroom door when the older boy showered too long.

On November 20, 2008, Ms. Hernandez told a County employee that her two younger children were "dressed nicely all of the time" but AE was not. Ms. Hernandez further stated that AE did not want to talk about "what was really going on in the foster placement." The County denied Ms. Hernandez' request to place AE in a different foster home.

On November 25, 2008, a County employee was informed that when AE brushed his teeth, showered, or used the bathroom at the foster home, the older boy entered the bathroom, told AE to hurry

---

[2] Mr. Marquez has since become a licensed marriage and family therapist.

[3] The factual recitation regarding AE's foster care is derived generally from AE's operative Fifth Amended Complaint ("FAC").

1  up, and cursed at AE.  AE informed County employees that the older boy would unlock the bathroom
2  door using his nail and threatened to "kick [AE's] ass."  The County employees suggested that AE use
3  a downstairs bathroom.  The County employees denied AE's request to telephone Ms. Hernandez and
4  told him he could write her letters.

5  On November 26, 2008, a County employee "followed up" with Mr. Marquez and provided him
6  the above information regarding AE's foster care.  Such information was further provided to Mr.
7  Marquez through therapy sessions or was otherwise in AE's file with Tulare Youth.  The FAC attributes
8  Mr. Marquez to have stated Mr. Marquez' opinion of a need to place more responsibility on the foster
9  mother in supervising the actions of the children in the foster home.  The FAC further attributes Mr.
10 Marquez to have indicated that Mr. Marquez did not believe AE "had been making allegations to seek
11 attention, but was instead minimizing the behavior" of the older boy.

12 On December 5 or 6, 2008, the older boy "assaulted, battered, and sexually abused" AE.  AE did
13 not report the assault, battery and sexual abuse until December 12 and 15, 2008 because the older boy
14 ordered AE not to do so and AE feared for his safety.

## AE's Treatment With Defendants

16 Tulare Youth is a non-profit organization and provides mental health services.  In his declaration,
17 Tulare Youth Clinical Director Tim Zavala ("Mr. Zavala") notes that Tulare Youth clinical staff use
18 "evidence-based practices and therapeutic interventions to assist clients."  Tulare Youth contracts with
19 the County to provide mental health services to children who have Medi-Cal or Healthy Families
20 coverage.  Upon referral, a client meets with Tulare Youth clinical staff who complete an assessment
21 and work with the client and guardian to develop treatment.

22 The County referred AE to Tulare Youth, and AE started treatment with Mr. Marquez on October
23 27, 2008. Mr. Marquez declares that his initial assignment with AE "was to treat him in regards to his
24 psychological adjustment relating to him being removed from his mother's custody and being placed in
25 foster care."  Mr. Marquez notes his practice during intake sessions to ask patients "if they have ever
26 been subjected to physical or sexual abuse."  Mr. Marquez further declares:

27 > When I conducted the intake, AE did not indicate that he had ever been subjected to
> sexual or physical abuse in any foster home.  Further, AE did not tell me anything that
28 > made me suspect that he was being subjected to any type of sexual or physical abuse in

3

the Ceballos[4] foster home.

During a November 5, 2008 therapy session, Mr. Marquez noticed "a rather large bruise" on one of AE's upper arms and attributes AE to state that the older hit him. After the session, Mr. Marquez reported to the County that "AE indicated that he had been physically abused by another foster child" and declares he made this communication "because I understood that I was, under California law, a person who has a legal obligation to report suspected physical abuse." Mr. Marquez later received a written confirmation from the County regarding his report of suspected physical abuse.

Mr. Marquez claims no advance knowledge of physical abuse of AE and declares that he "had not been told by any person that AE was being subjected to physical abuse in the Ceballos home" and "did not suspect that AE was being subjected to any physical abuse in the Ceballos foster home." Mr. Marquez declares that he first learned of AE's sexual assault at the foster home on December 12, 2008 when a County employee "provided this information" and that prior to such time, he had never heard from anyone, including AE, that "AE had been subject to any type of sexual abuse in the Ceballos foster home." Mr. Marquez further declares that he "had no suspicion that AE was being sexually abused in the Ceballos foster home or that he would likely be subjected to sexual abuse if he was not promptly removed from the Ceballos foster home."

Mr. Marquez continued to provide therapy to AE until about mid-2010 when another Tulare Youth therapist took over.

### **Foster Care Decisions**

Mr. Zavala and Mr. Marquez each declare that they have never seen a County directive stating or suggesting that Tulare Youth or its therapists are authorized "to make foster home placement decisions or recommendations." They each further declare that:

1. No County employee has asked for decisions or recommendations regarding foster home placement of a child receiving therapy from Tulare Youth;

2. Foster home placement decisions are beyond the scope of Tulare Youth's contracted work with the County; and

---

[4] Sandra Ceballos was the foster mother of AE and the older boy.

4

3. Tulare Youth employees lack authority to make foster home placement decisions regarding children whom the County refers to Tulare Youth for therapy.

### The Older Boy's Contacts With Tulare Youth

The older boy attended Tulare Youth therapy sessions up to February 26, 2008, several months before AE started his therapy at Tulare Youth. The older boy's therapist never had therapy with AE. Mr. Marquez declares that he never did therapy work with the older boy and first learned that the older boy had Tulare Youth therapy after Mr. Marquez had learned of the sexual assault against AE in December 2008.

### AE's Claims Against Defendants

The FAC alleges a sole negligence claim against defendants based on their failure to cause AE to be removed from the foster home, to report the abuse of AE to "proper authorities," and to take "other necessary remedial or protective action."

## DISCUSSION

### Summary Judgment Standards

Defendants seek summary judgment in the absence of facts or law to support AE's negligence claims against defendants.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

5

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce

6

evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e)(3) provides that when a party "fails to properly address another party's assertion of fact," a court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, the record reveals that defendants are entitled to summary judgment.

### Negligence Elements

Defendants note the absence of evidence to establish elements of AE's negligence claims. Defendants points to the failure of AE's interrogatory responses to explain the basis of his negligence claims.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,* 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

With these standards in mind, this Court turns defendants' attacks on AE's particular negligence claims.

### Legal Duty To Remove From Foster Home

Defendants argue that given their limited roles as a mental health services contractor and therapist intern, they lacked a duty and authority to remove AE from the foster home.

"Foster care placement is a governmental function that involves the exercise of discretion." *County of Los Angeles v. Superior Court*, 102 Cal.App.4th 627, 640, 125 Cal.Rptr.2d 637 (2002). Defendants contend that relevant statutes obligate social workers and foster care agencies "to make foster care placement decisions." Defendants point to California Welfare and Institutions Code section 361.2(f)(3) which provides: "In determining whether the child should be moved, the social worker shall take into consideration the potential harmful effects of disrupting the placement of the child and the parent's or guardian's reason for the move." Defendants further point to California regulations which require a foster family agency to address policies and procedures to remove a child from a foster home.

*See* 22 C.C.R. § 88068.4(a). Defendants conclude that no relevant statute or regulation remotely suggest that defendants were legally obligated to cause AE's removal from the foster home.

Neither the record nor pertinent legal authorities imposed on defendants a duty to seek AE's removal from the foster home. As such, AE's foster home removal claim fails.

**Legal Duty To Take Other Necessary Remedial Or Protective Action**

Defendants attack as lacking merit AE's claim that defendants owed a duty to take other necessary remedial or protective action in that they fulfilled their obligations to provide AE therapy and to report abuse. Defendants point to Mr. Marquez' post-November 5, 2008 therapy session report to the County of the older boy's physical abuse and providing his opinions that AE minimized the older boy's behavior and to place more responsibility on the foster mother. Defendants further point to Mr. Marquez' lack of knowledge of the older boy's sexual abuse until a County employee provided such information on December 12, 2008. Defendants argue that Mr. Marquez' therapy limited to less than a month and a half prior to the alleged sexual abuse undercuts a purported duty to take other necessary and remedial and protective action.

Defendants raise valid points. The record lacks information of what other action defendants were required to take. As such, AE's other action claim fails.

**Breach Of Legal Duty To Report Abuse**

Defendants contend that they breached no duty to report abuse to proper authorities.

California Penal Code section 11166(a) obligates a "mandated reporter" to "make a report to an agency . . . whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." California Penal Code section 11166(a)(1) defines "reasonable suspicion" to mean "that it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect." Under California Penal Code section 11165.6, "'Child abuse or neglect' does not include a mutual affray between minors."

Defendants characterize as "meritless" a claim that defendants breached a duty to report abuse

to proper authorities given Mr. Marquez' report to the County after his November 5, 2008 session with AE. Defendants argue that Mr. Marquez "discharged his duty to report physical abuse." Defendants contend that Mr. Marquez was unaware of facts to suggest sexual abuse until December 12, 2008 when he learned of the older boy's alleged sexual abuse. Defendants point to Mr. Marquez' lack of suspicion of sexual abuse in that he was provided no information from anyone, including AE, to suggest that AE was a victim of sexual abuse. Defendants conclude that since Mr. Marquez reported physical abuse of which he was aware, he lacked a "duty to report anything further."

Defendants are correct. The record reveals that Mr. Marquez fulfilled reporting duties and that he was aware of nothing further to warrant additional reporting. AE's failure to report claim fails.

### Breach Of Duty To Take Other Necessary Remedial Or Protective Action

Defendants argue that they breached no duty to take other necessary remedial or protective action given Mr. Marquez' post-November 5, 2008 therapy session report to the County and informing the County of his opinions that AE minimized the older boy's actions and that the foster mother needed to take more responsibility. Defendants again point to the absence of facts to alert Mr. Marquez of potential sexual abuse until he received information from a County employee on December 12, 2008. Defendants conclude that the "situation" was handled through proper County channels to eliminate factual or legal grounds to require defendants "to step out of their roles of therapists to do anything further."

As noted above, defendants lacked a duty to take other action. In the absence of such duty, there is no actionable breach to doom further the other action claim.

### Proximate Cause

Defendants contend that their alleged wrongs were not the proximate cause of AE's injuries.

In *Mitchell v. Gonzales,* 54 Cal.3d 1041, 1049, 1 Cal.Rptr.2d 913 (1991), the California Court of Appeal explained application of proximate cause:

> "There are two widely recognized tests for establishing cause in fact. The 'but for' or 'sine qua non' rule, unfortunately labeled 'proximate cause' in BAJI No. 3.75, asks whether the injury would not have occurred but for the defendant's conduct. The other test, labeled 'legal cause' in BAJI No. 3.76, asks whether the defendant's conduct was a substantial factor in bringing about the injury." *(Maupin v. Widling* (1987) 192 Cal.App.3d 568, 574 [237 Cal.Rptr. 521 (1987)).

> . . . It has generally been recognized that the "but for" test contained in BAJI No. 3.75 should not be used when two "causes concur to bring about an event and either one of them operating alone could have been sufficient to cause the result (*Thomsen v. Rexall Drug & Chemical Co.* [(1965)] 235 Cal.App.2d 775 [45 Cal.Rptr. 642]).

Defendants note that the "causation contention" against them is their alleged failure "to take some legally required action that would have purportedly avoided the sexual assault." Defendants contend that since they were not "independent causes" of AE's harm, the "but for" test applies. Defendants argue that as a matter of law, they are subject to no "but for" causation given the government function to make foster placement decisions to render defendants "legally incapable of removing AE from his foster home." *See County of Los Angeles v. Superior Court*, 102 Cal.App.4th at 640, 125 Cal.Rptr.2d 637.

Defendants continue that the FAC acknowledges the County's awareness of issues of which Mr. Marquez allegedly failed to warn in that the FAC alleges that "Defendant [County employee] Yadira Portillo provided Defendants Tulare Youth Service Bureau, Incorporated, Adrian Marquez and Does 76 through 100, inclusive, with all facts, information, knowledge and notice that she had learned or knew of up to this point." Defendants point to an absence of facts "to explain how any further reports from Marquez would have caused the County to immediately remove him from his foster home."

AE bears the burden of proof as to causation:

> On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. [Citation.]

*Ortega v. Kmart Corp.*, 26 Cal.4th 1200, 1205-1206, 36 P.3d 11 (2001).

To show causation, a "plaintiff must show some substantial link or nexus between omission and injury." *Saelzler v. Advanced Group 400*, 25 Cal.4th 763, 778, 107 Cal.Rptr.2d 617 (2001).

Defendants' unopposed points are well taken. The record lacks a substantial link between defendants' alleged wrongs and AE's injury. In the absence of factual issues as to proximate cause, AE's negligence claims against defendants fail.

///

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS summary judgment for defendants;

2. DIRECTS the clerk to enter judgment against plaintiff AE and in favor of defendants Tulare Youth Service Bureau, Inc. and AdrainI Marquez in that there is no just reason to delay to enter such judgment given that AE's claims against these defendants and their alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b); and

3. DIRECTS the clerk not to close this action.

IT IS SO ORDERED.

Dated:   **January 12, 2012**                    /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE